

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. <u>16-60340-CR-ZLOCH/HUNT(s)</u>
18 U.S.C. § 1343
18 U.S.C. § 1349
18 U.S.C. § 2

**UNITED STATES OF AMERICA**

**vs.**

**MARCO LAURETI and**
**FELIX MOSTELAC**
**a/k/a FELIX MOSTELAC TRUJILLO,**

        **Defendants.**

_____/

FILED BY _____ D.C.

**DEC 1 3 2016**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

<u>**SEALED**</u>

<u>**SUPERSEDING INDICTMENT**</u>

The Grand Jury charges that:

<u>**GENERAL ALLEGATIONS**</u>

At various times relevant to this Indictment:

<u>**The Defendants**</u>

1.      Defendant **MARCO LAURETI** was: (a) Chief Executive Officer of

Northview Real Estate, LLC, then located at 2955 North Bay Road, Miami Beach, Florida 33119;

(b) Chief Executive Officer of Northview Equities, LLC, then located at 2955 North Bay Road,

Miami Beach, Florida 33119; (c) President and Registered Agent of ReTrade, Inc., then located at

2955 North Bay Road, Miami Beach, Florida 33119; (d) President and Registered Agent of Laureti

Holdings Company, then located at 2955 North Bay Road, Miami Beach, Florida 33119; and (e)

1

President and Registered Agent of Laureti Publishing, Inc., then located at 2955 North Bay Road, Miami Beach, Florida 33119.

2.      Defendant **MARCO LAURETI** was licensed by the State of Florida as a real estate sales associate (license number SL569847) and a mortgage broker (license number MB0832719).

3.      Defendant **MARCO LAURETI**, Northview Equities, LLC, Northview Real Estate, LLC, and ReTrade, Inc, maintained the following bank accounts at Wachovia Bank in Miami-Dade County, Florida: accounts ending in 4426 and 2870 in the name of Northview Equities, LLC; account ending in 2171 in the name of Northview Real Estate LLC; account ending in 6712 in the name of Marco Laureti; and an account for Retrade Inc. ending in 2582.    Defendant **MARCO LAURETI** was the sole signatory on these accounts and maintained access to these accounts.

4.      Defendant **FELIX MOSTELAC** was: (a) Director and Registered Agent of Mostelac Enterprises, Inc., then located at 10714 S.W. 24th Street, Miami, Florida 33165 and (b) President of American Holding Group, LLC, then located at 6271 Coral Way, Miami, Florida 33155.

5.      Defendant **FELIX MOSTELAC**, American Holding Group, LLC, and Mostelac Enterprises, LLC maintained the following bank accounts at the following banks: Eastern National Bank accounts ending in 5506 and 2806 in the name of American Holding Group, LLC, and account ending in 1506 in the name of Felix Mostelac and a Colonial Bank account ending in 6607 in the name of Mostelac Enterprises, LLC.    Defendant **FELIX MOSTELAC** was the sole signatory and maintained access to these accounts.

2

## The Title Agency

6.        Florida Elite Title & Escrow LLC (hereinafter referred as "Florida Title") was a title company, then located at 4801 South University Drive, Suite 127, Davie, Florida 33328.

## The Properties

7.        1800 Sunset Harbour Drive was a multi-unit condominium development located in Miami Beach, Florida.   Defendant **FELIX MOSTELAC** purchased Unit TS-2/TS-3 at 1800 Sunset Harbour Drive (hereinafter "Sunset Harbour property").

8.        205 E. San Marino Drive was a single family residential home located in Miami Beach, Florida.   Defendant **MARCO LAURETI** purchased 205 E. San Marino Drive (hereinafter "San Marino property").

9.        45 Hendricks Isle (hereinafter "45 Hendricks Isle") was a multi-unit condominium development located in Fort Lauderdale, Florida.   Units 2B, 3D, PH-F and 4D of 45 Hendricks Isle are relevant to this Indictment.

## The Financial Institution

10.        Washington Mutual Bank FA (hereinafter "Washington Mutual"), was a mortgage lender doing business throughout the United States, including in the State of Florida.

11.        Washington Mutual was a federally insured financial institution, as defined in Title 18, United States Code, Section 20, and whose accounts were insured by the Federal Deposit Insurance Corporation.

12.        The Sunset Harbour property, San Marino property, and Units 2B, 3D, PH-F and 4D of 45 Hendricks Isle were subsequently foreclosed upon and Washington Mutual was affected because it suffered substantial losses.

3

## Purchase & Sale of Residential Real Estate

13.     Purchasers of residential property, commonly referred to as the borrower(s), frequently finance the purchase of real estate by obtaining a mortgage loan through a financial institution or mortgage lending company.   As part of the mortgage lending process, mortgage brokers, for a fee (using the information supplied in whole or in part by the borrower) fill out and submit to the lenders on behalf of the borrower, various forms containing the information necessary for the lender to consider in deciding whether to approve the loan.   Among the customary forms are: the Uniform Residential Loan Application (Form 1003); the Request for Verification of Employment (Form 1005); the Request for Verification of Deposit (Form 1006); and other documents.   The mortgage lenders rely on the accuracy of the information supplied in the applications and forms in the approval process of the loan.

14.     Once the loan is approved by the mortgage lender, a closing on the property is scheduled.   Generally, upon approval and prior to the closing of the loan, the lender will fund the loan by sending the funds by wire transfer to the bank account of the closing agency responsible for the closing.   The closing agency is then responsible for disbursing these funds to the appropriate parties.   At the closing, the closing agency, acting for and on behalf of the mortgage lender, is required by the mortgage lender to prepare a Settlement Statement (hereinafter "HUD-1 Settlement Statement") showing the receipt and disbursement of all funds, that is, the funds paid in by the borrower, the funds furnished by the borrower's lender, the funds due to the seller and closing costs and expenses.   The HUD-1 Settlement Statement will also reflect the escrow deposits, the seller's mortgages to be paid off, if applicable, and miscellaneous obligations to be paid off.   The closing agency will collect any additional funds due from the borrower at the

4

closing (which is known as the cash-to-close, cash required to close, or cash from borrower) and will disburse funds due to the seller and/or borrower. The borrower and seller will sign various legal documents at the closing, including the warranty deed, note, mortgage, occupancy affidavits, final Uniform Residential Loan Application (Form 1003), HUD-1 Settlement Statement, and lender disclosure documents. The closing agency will then issue a final title insurance policy to the borrower and lender showing the new owner, legal description, mortgage amount and exceptions to the policy.

15. The closing agency has a fiduciary responsibility to the mortgage lender to hold the borrowed loan funds in a trust/escrow bank account. The closing agency, under their fiduciary role, is required to collect all necessary funds, to disburse all funds to the appropriate parties and to account for all monies disbursed at closing. The closing agency responsible for the closing is obligated to adhere to the mortgage lender's closing instructions, and must obtain and send back to the mortgage lender, signed and executed documents that the lender requests, including the final HUD-1 Settlement Statement.

16. A straw buyer is somebody who purchases property in their own name in order to conceal the identity of the true purchaser.

## COUNT 1
## CONSPIRACY TO COMMIT WIRE FRAUD
## AFFECTING A FINANCIAL INSTITUTION
## (18 U.S.C. § 1349)

1. The allegations in paragraphs 1 through 16 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.     From in or around June 8, 2007, through in or around January 30, 2009, in Broward and Miami-Dade Counties, in the Southern District of Florida, and elsewhere, the defendants,

**MARCO LAURETI and**
**FELIX MOSTELAC**
**a/k/a FELIX MOSTELAC TRUJILLO,**

did willfully and knowingly combine, conspire, confederate, and agree with others known to the Grand Jury to commit wire fraud, that is, to knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent, pretenses, representations, and promises, knowing that they were false and fraudulent when made, and, for the purpose of executing the scheme and artifice to defraud and to obtain money and property, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds, and affecting a financial institution, in violation of Title 18, United States Code, Section 1343.

## OBJECT OF THE CONSPIRACY

3.     It was the purpose of the conspiracy for defendants **MARCO LAURETI,** **FELIX MOSTELAC** and their co-conspirators to unlawfully enrich themselves by, among other things, causing to be made and making materially false statements on Uniform Residential Loan Applications (Form 1003's), HUD-1 Settlement Statements and elsewhere, and submitting those false statements to the lender, Washington Mutual, in order to fraudulently obtain mortgages on various properties within the Broward and Miami-Dade Counties in the State of Florida, and diverting portions of the loan proceeds for their own use.

6

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the object of the conspiracy included, among others, the following:

4.      Identifying residential properties in Broward and Miami-Dade Counties for Purchase.

5.      Recruiting straw buyers to purchase the properties at 45 Hendricks Isle.

6.      Making materially false statements on the Form 1003 Loan Applications and HUD-1 Settlement Statements to induce the lender, Washington Mutual, to fund the mortgage loans on the properties.

7.      Obtaining the funding for these mortgage loans through an interstate wire transfer; and

8.      Diverting a portion of the proceeds of the funding loans for the defendants and their co-conspirators' own use and profit, including to pay the straw buyers and to pay the cash from the borrower portion of the purchase price required by Washington Mutual, as specifically described in more detail below with respect to each property.

### Sunset Harbour Property

9.      On or about June 8, 2007, defendants **MARCO LAURETI, FELIX MOSTELAC** and others submitted and caused to be submitted a materially false and fraudulent Uniform Residential Loan Application (Form 1003) and related documents to the lender, Washington Mutual, thereby inducing the lender to make a mortgage loan to defendant **FELIX MOSTELAC** for his purchase of the Sunset Harbour property which contained, among others, the following material misrepresentations:

7

    i.     Defendant **FELIX MOSTELAC** stated that the balance in his Colonial Bank account ending in 6007 was $620,200, when defendants **MARCO LAURETI** and **FELIX MOSTELAC** knew that this account balance was grossly inflated and false; and

    ii.    Defendant **FELIX MOSTELAC** stated that the balance in his Colonial Bank account ending in 1628 was $800,206, when defendants **MARCO LAURETI** and **FELIX MOSTELAC** knew that this account balance was grossly inflated and false.

10.    On or about June 8, 2007, defendants **MARCO LAURETI**, **FELIX MOSTELAC** and another co-conspirator submitted and caused to be submitted to the lender, Washington Mutual, a HUD-1 Settlement Statement stating on line 303 that defendant **FELIX MOSTELAC** provided "cash from borrower" of $2,341,113.62, when defendants **MARCO LAURETI** and **FELIX MOSTELAC** knew defendant **FELIX MOSTELAC** did not pay the amount from his own funds. Defendant **MARCO LAURETI** directed a co-conspirator to wire and divert $3,100,000 from Washington Mutual's loan funding wire to defendant **FELIX MOSTELAC**'s company, American Holding Group, on June 13, 2007, resulting in defendant **FELIX MOSTELAC** obtaining a cashier's check on June 13, 2007, to pay the "cash from borrower" obligation.

11.    On or about June 8, 2007, defendants **MARCO LAURETI, FELIX MOSTELAC** and another co-conspirator caused Washington Mutual to wire the loan proceeds of approximately $4,270,621.71 in interstate commerce from Washington Mutual Bank in Stockton, California to Florida Title's Bank of America account ending in 9340 at Davie, Florida, for disbursement at the

closing of the sale of the Sunset Harbour property.

### 45 Hendricks Isle, Unit 2B

12.    On or about June 25, 2007, defendants **MARCO LAURETI, FELIX MOSTELAC** and others submitted and caused to be submitted a materially false and fraudulent Uniform Residential Loan Application (Form 1003) and related documents to the lender, Washington Mutual, thereby inducing the lender to make a mortgage loan to the borrower, a straw buyer, for the 45 Hendricks Isle property, Unit 2B, which contained, among others, the following material misrepresentations:

  i.    The borrower's stated employment income was $36,407.77 per month, when defendants **MARCO LAURETI** and **FELIX MOSTELAC** knew that this income amount was grossly inflated and false;

  ii.    The borrower's stated balance in his Bank of America account ending in 0158 was $472,248.65, when defendants **MARCO LAURETI** and **FELIX MOSTELAC** knew that this account number did not belong to the borrower and/or the balance was grossly inflated and false; and

  iii.    The borrower's stated use of the property would be as his primary residence, when defendants **MARCO LAURETI** and **FELIX MOSTELAC** knew the property would be held for investment purposes only.

13.    On or about June 25, 2007, defendants **MARCO LAURETI** and **FELIX MOSTELAC** and another co-conspirator submitted and caused to be submitted to the lender, Washington Mutual, a HUD-1 Settlement Statement stating on line 303 that the borrower provided "cash from borrower" of $143,417.83, when defendants **MARCO LAURETI** and **FELIX**

MOSTELAC and another co-conspirator knew the borrower did not pay the amount from his own funds.   Defendant **MARCO LAURETI** directed another co-conspirator to wire and divert $387,208.92 from Washington Mutual's loan funding wire to defendant **FELIX MOSTELAC**'s company, American Holding Group, LLC, on June 26, 2007, resulting in defendant **FELIX MOSTELAC** obtaining a cashier's check on June 26, 2007, to pay the "cash from borrower" obligation.

14.   On or about June 25, 2007, defendants **MARCO LAURETI, FELIX MOSTELAC** and another co-conspirator caused Washington Mutual to wire the loan proceeds in two separate wires of approximately $1,316,006.80 and $160,639.20 in interstate commerce from Washington Mutual Bank in Stockton, California to Florida Title's Bank of America account ending in 9340 in Davie, Florida, for disbursement at the closing of the sale of the 45 Hendricks Isle, Unit 2B property.

## 45 Hendricks Isle, Unit 3D

15.   On or about June 26, 2007, defendant **MARCO LAURETI** and others submitted and caused to be submitted a materially false and fraudulent Uniform Residential Loan Application (Form 1003) and related documents to the lender, Washington Mutual, thereby inducing the lender to make a mortgage loan for the 45 Hendricks Isle, Unit 3D property, which contained, among others, the following material misrepresentations:

i.   The borrower's stated employment income from a company owned by defendant **MARCO LAURETI** was $49,619.09 per month, when defendant **MARCO LAURETI** knew that the income amount was grossly inflated and false and the employment was false; and

10

ii.      The borrower's stated balance in his Wachovia account was $700,000.00, when defendant **MARCO LAURETI** knew that the balance was grossly inflated and false.

16.      On or about June 26, 2007, defendant **MARCO LAURETI** and a co-conspirator submitted and caused to be submitted to the lender, Washington Mutual, a HUD-1 Settlement Statement stating on line 303 that the borrower provided "cash from borrower" of $596,050.99, when defendant **MARCO LAURETI** and a co-conspirator knew the borrower did not pay the amount from his own funds.   Defendant **MARCO LAURETI** directed a co-conspirator to wire and divert $955,000.00 from Washington Mutual's loan funding wire to defendant **MARCO LAURETI**'s company, Northview Equities, LLC, on June 27, 2007 resulting in defendant **MARCO LAURETI** obtaining a cashier's check on June 27, 2007, to pay the "cash from borrower" obligation.

17.      On or about June 26, 2007, defendant **MARCO LAURETI** and a co-conspirator caused Washington Mutual to wire the loan proceeds in a wire of approximately $1,497,734.30 in interstate commerce from Washington Mutual's account in Stockton, California to Florida Title's Bank of America account ending in 9340 in Davie, Florida, for disbursement at the closing of the sale of the 45 Hendricks Isle, Unit 3D property.

### 205 E. San Marino Drive Property

18.      On or about July 18, 2007, defendant **MARCO LAURETI** and others submitted and caused to be submitted a materially false and fraudulent Uniform Residential Loan Application (Form 1003) and related documents to the lender, Washington Mutual, thereby inducing the lender

to make a mortgage loan to defendant **MARCO LAURETI** for his purchase of the San Marino property, which contained, among others, the following material misrepresentations:

      i.     Defendant **MARCO LAURETI** stated the employment income from his company, Laureti Publishing Co., was $105,483.25 per month, when defendant **MARCO LAURETI** knew that the income amount was grossly inflated and false;

      ii.     Defendant **MARCO LAURETI** stated that the balance in his Citibank account ending in 5133 was $597,659.45 and, in addition, defendant **MARCO LAURETI** provided, in an electronic communication dated June 12, 2007 to the mortgage broker, a falsified Citibank account statement showing the balance in the account ending in 5133 was $605,520.25 for April 30, 2007 and $597,659.45 for May 31, 2007, when defendant **MARCO LAURETI** knew that the balances on the Form 1003 and in the Citibank account statements were grossly inflated and false;

      iii.     Defendant **MARCO LAURETI** stated in an electronic communication dated June 12, 2007 to the mortgage broker that his assets included $960,000 in a personal account at Wachovia, and, in addition, defendant **MARCO LAURETI** provided a falsified bank statement for a Wachovia account ending in 6712 with a balance of $960,915.32 as of May 17, 2007, when defendant **MARCO LAURETI** knew the balance was grossly inflated and false; and

      iv.     Defendant **MARCO LAURETI** stated in an electronic communication dated June 12, 2007 to the mortgage broker that his assets included $778,000 in a Wachovia account for Laureti Holdings Company, and, in addition, defendant **MARCO LAURETI** provided a falsified bank statement for a Wachovia account

12

ending in 2401 for Laureti Holdings Company with a balance of $777,790.96 as of May 31, 2007, when defendant **MARCO LAURETI** knew the balance was grossly inflated and false.

19.     On or about July 18, 2007, defendant **MARCO LAURETI** and a co-conspirator submitted and caused to be submitted to the lender, Washington Mutual, a HUD-1 Settlement Statement stating on line 303 that the borrower, defendant **MARCO LAURETI**, provided "cash from borrower" of $1,693,899.41 when defendant **MARCO LAURETI** and a co-conspirator knew defendant **MARCO LAURETI** did not pay the majority of the amount from his own funds. Defendant **MARCO LAURETI** directed a co-conspirator to wire and divert $1,200,000.00 from Washington Mutual's loan funding wire to defendant **MARCO LAURETI**'s company, ReTrade, Inc., on July 19, 2007 resulting in defendant **MARCO LAURETI** obtaining a cashier's check on July 19, 2007, to pay the "cash from borrower" obligation.

20.     On or about July 18, 2007, defendant **MARCO LAURETI** and others caused Washington Mutual to wire the loan proceeds in a wire of approximately $5,210,280.82 in interstate commerce from Washington Mutual's account in Stockton, California to Florida Title's Bank of America account ending in 9340 in Davie, Florida, for disbursement at the closing of the sale of the San Marino property.

**<ins>45 Hendricks Isle, Unit PH-F</ins>**

21.     On or about July 20, 2007, defendants **MARCO LAURETI, FELIX MOSTELAC**, a co-conspirator and others submitted and caused to be submitted a materially false and fraudulent Uniform Residential Loan Application (Form 1003) and related documents to the lender, Washington Mutual, thereby inducing the lender to make a mortgage loan to the borrower,

a straw buyer, for the 45 Hendricks Isle, Unit PH-F property, also referred to as Penthouse F, which contained, among others, the following material misrepresentations:

    i.    The borrower's stated income from her employer was $91,709.81 per month, when defendants **MARCO LAURETI, FELIX MOSTELAC** and a co-conspirator knew this income amount was grossly inflated and false and the employment was false;

    ii.    The borrower's stated balance in her Bank of America account ending in 5600 was $1,179,761.85, when defendants **MARCO LAURETI, FELIX MOSTELAC** and a co-conspirator knew that this account balance was grossly inflated and false; and

    iii.    The borrower's stated use of the property would be as her primary residence, when defendants **MARCO LAURETI, FELIX MOSTELAC** and a co-conspirator knew the property would be held for investment purposes only.

22.    On or about July 20, 2007, defendants **MARCO LAURETI, FELIX MOSTELAC** and other co-conspirators submitted and caused to be submitted to the lender, Washington Mutual, a HUD-1 Settlement Statement stating on line 303 that the borrower provided "cash from borrower" of $716,992.40, when defendants **MARCO LAURETI, FELIX MOSTELAC** and other co-conspirators knew the borrower did not pay the amount from her own funds.    Defendant **MARCO LAURETI** directed a co-conspirator to wire and divert $1,663,381.50 from Washington Mutual's loan funding wire to defendant **MARCO LAURETI**'s company, Northview Equities, LLC, on July 24, 2007, resulting in defendant **MARCO LAURETI** obtaining a cashier's check on July 24, 2007, to pay the "cash from borrower" obligation.

23.     On or about July 20, 2007, defendants **MARCO LAURETI, FELIX MOSTELAC** and other co-conspirators caused Washington Mutual to wire the loan proceeds of approximately $3,105,817.44 in interstate commerce from Washington Mutual Bank in Stockton, California to Florida Title's Bank of America account ending in 9340 in Davie, Florida, for disbursement at the closing of the sale of the 45 Hendricks Isle, Unit PH-F property.

## 45 Hendricks Isle, Unit 4D

24.     On or about August 6, 2007, defendants **MARCO LAURETI, FELIX MOSTELAC,** the borrower/co-conspirator and others submitted and caused to be submitted a materially false and fraudulent Uniform Residential Loan Application (Form 1003) and related documents to the lender, Washington Mutual, thereby inducing the lender to make a mortgage loan to the borrower, a straw buyer, for the 45 Hendricks Isle, Unit 4D property, which contained, among others, the following material misrepresentations:

　　　　i.     The borrower/co-conspirator's stated income from his employer was $46,047.96 per month, when defendants **MARCO LAURETI, FELIX MOSTELAC** and the borrower/co-conspirator knew that this income amount was grossly inflated and false;

　　　　ii.     The borrower/co-conspirator's stated balance in his Citibank account ending in 4444 was $1,313,207.91, when defendants **MARCO LAURETI, FELIX MOSTELAC** and the borrower/co-conspirator knew that this account balance was grossly inflated and false; and

　　　　iii.     The borrower/co-conspirator's stated use of the property would be as his primary residence, when defendants **MARCO LAURETI, FELIX MOSTELAC**

15

and the borrower/co-conspirator knew the property would be held for investment purposes only.

25.     On or about August 6, 2007, defendants **MARCO LAURETI, FELIX MOSTELAC** and other co-conspirators submitted and caused to be submitted to the lender, Washington Mutual, a HUD-1 Settlement Statement stating on line 303 that the borrower provided "cash from borrower" of $157,917.36, when defendants **MARCO LAURETI, FELIX MOSTELAC**, the borrower/co-conspirator and another co-conspirator knew the borrower/co-conspirator did not pay the amount from the borrower/co-conspirator's own funds.   Defendant **MARCO LAURETI** directed a co-conspirator to wire and divert $790,000.00 from Washington Mutual's loan funding wire to defendant **MARCO LAURETI**'s company, Northview Equities, LLC, on August 6, 2007, resulting in defendant **MARCO LAURETI** obtaining a cashier's check on August 6, 2007, to pay the "cash from borrower" obligation.

26.     On or about August 6, 2007, defendants **MARCO LAURETI, FELIX MOSTELAC** and other co-conspirators caused Washington Mutual to wire the loan proceeds in two separate wires of approximately $1,719,315.54 and $210,849.00 in interstate commerce from Washington Mutual in Stockton, California to Florida Title's Bank of America account ending in 9340 in Davie, Florida, for disbursement at the closing of the sale for the 45 Hendricks Isle, Unit 4D property.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-9
## WIRE FRAUD AFFECTING A FINANCIAL INSTITUTION
### (18 U.S.C. §§ 1343 and 2)

1.       The allegations in paragraphs 1 through 16 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.       From in or around June 8, 2007 through in or around August 6, 2007, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

### MARCO LAURETI and
### FELIX MOSTELAC
### a/k/a FELIX MOSTELAC TRUJILLO,

did knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and for the purpose of executing the scheme and artifice to defraud and to obtain money and property, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate commerce, certain writings, signs, signals, pictures and sounds, and affecting a financial institution, in violation of Title 18, United States Code, Sections 1343 and 2.

### PURPOSE OF THE SCHEME AND ARTIFICE

3.    It was the purpose of the scheme and artifice to defraud for defendants **MARCO LAURETI, FELIX MOSTELAC** and others to unlawfully enrich themselves by, among other things, causing to be made and making materially false statements on Uniform Residential Loan Applications (Form 1003's), HUD-1 Settlement Statements and elsewhere, and submitting those false statements to the lender, Washington Mutual, in order to fraudulently obtain mortgages on various properties within the Broward and Miami-Dade Counties in the State of Florida, and

diverting portions of the loan proceeds for their own use.

## THE SCHEME AND ARTIFICE

4.     The allegations in paragraphs 4 through 26 of the Manner and Means Section of Count 1 of this Indictment are re-alleged and incorporated fully herein by reference as a description of the scheme and artifice.

## USE OF THE WIRES

5.     On or about the dates specified below, in Broward County, in the Southern District of Florida and elsewhere, the defendants, **MARCO LAURETI** and **FELIX MOSTELAC**, and others, for the purpose of executing the aforesaid scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly transmit and cause to be transmitted by means of wire communication, in interstate commerce, certain writings, signs, signals, pictures and sounds, affecting a financial institution, as more particularly described below:

| COUNT | DEFENDANT(s) | DATE | PROPERTY ADDRESS | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|---|
| 2 | **MARCO LAURETI and FELIX MOSTELAC** | June 8, 2007 | 1800 Sunset Harbour Drive, Unit TS-2/TS-3, Miami Beach, Florida 33139 | Wire transfer of $4,270,621.71 from Washington Mutual Bank in Stockton, California to the Bank of America account ending in 9340 of Florida Elite Title & Escrow LLC, a title company in Davie, Florida. |

18

| COUNT | DEFENDANT(s) | DATE | PROPERTY ADDRESS | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|---|
| 3 | **MARCO LAURETI and FELIX MOSTELAC** | June 25, 2007 | 45 Hendricks Isle, Unit 2B Fort Lauderdale, Florida 33301 | Wire transfer of $1,316,006.80 from Washington Mutual Bank in Stockton, California to the Bank of America account ending in 9340 of Florida Elite Title & Escrow LLC, a title company in Davie, Florida. |
| 4 | **MARCO LAURETI and FELIX MOSTELAC** | June 25, 2007 | 45 Hendricks Isle, Unit 2B Fort Lauderdale, Florida 33301 | Wire transfer of $160,639.20 from Washington Mutual Bank in Stockton, California to the Bank of America account ending in 9340 of Florida Elite Title & Escrow LLC, a title company in Davie, Florida. |
| 5 | **MARCO LAURETI** | June 26, 2007 | 45 Hendricks Isle, Unit 3D Fort Lauderdale, Florida 33301 | Wire transfer of $1,497,734.30 from Washington Mutual Bank in Stockton, California to the Bank of America account ending in 9340 of Florida Elite Title & Escrow LLC, a title company in Davie, Florida. |
| 6 | **MARCO LAURETI** | July 18, 2007 | 205 E. San Marino Drive, Miami Beach, Florida 33139 | Wire transfer of $5,210,280.82 from Washington Mutual Bank in Stockton, California to the Bank of America account ending in 9340 of Florida Elite Title & Escrow LLC, a title company in Davie, Florida. |

| COUNT | DEFENDANT(s) | DATE | PROPERTY ADDRESS | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|---|
| 7 | MARCO LAURETI and FELIX MOSTELAC | July 20, 2007 | 45 Hendricks Isle, Unit PH-F Fort Lauderdale, Florida 33301 | Wire transfer of $3,105,817.44 from Washington Mutual Bank in Stockton, California to the Bank of America account ending in 9340 of Florida Elite Title & Escrow LLC, a title company in Davie, Florida. |
| 8 | MARCO LAURETI and FELIX MOSTELAC | August 6, 2007 | 45 Hendricks Isle, Unit 4D Fort Lauderdale, Florida 33301 | Wire transfer of $1,719,315.54 from Washington Mutual Bank in Stockton, California to the Bank of America account ending in 9340 of Florida Elite Title & Escrow LLC, a title company in Davie, Florida. |
| 9 | MARCO LAURETI and FELIX MOSTELAC | August 6, 2007 | 45 Hendricks Isle, Unit 4D Fort Lauderdale, Florida 33301 | Wire transfer of $210,849.00 from Washington Mutual Bank in Stockton, California to the Bank of America account ending in 9340 of Florida Elite Title & Escrow LLC, a title company in Davie, Florida. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## CRIMINAL FORFEITURE

1.     The allegations of Counts 1 through 9 of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America of property, in which the defendant has an interest, pursuant to the provisions of Title 28, United States Code, Section 2461 and Title 18, United States Code, Section 981(a)(1)(C) and Title

18, United States Code, Sections 982(a)(2).

2.     Upon conviction of any of Counts 1 through 9 of this Indictment, in violation of Title 18, United States Code, Sections 1349 and/or 1343, the defendants, **MARCO LAURETI** and **FELIX MOSTELAC**, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any property, real or personal, which constitutes, or is derived from, proceeds traceable to such violation.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461, and the procedures outlined in Title 21, United States Code, Section 853 and Title 18, United States Code, Section 982(a)(2).

A TRUE BILL

_____
FOREPERSON

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
RANDALL D. KATZ
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>16-60340-CR-ZLOCH/HUNT(s)</u>

UNITED STATES OF AMERICA

vs.

MARCO LAURETI and
FELIX MOSTELAC
a/k/a FELIX MOSTELAC TRUJILLO,
                    Defendant.
_____/

### CERTIFICATE OF TRIAL ATTORNEY*

**Case Information:**

Court Division: (Select One)

| New Defendant(s) | X Yes ____ No |
| Number of New Defendants | 1 |
| Total number of counts | 9 |

Miami ____ Key West_____
FTL __X__ WPB _____ FTP____

I do hereby certify that:

1.     I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.     I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.     Interpreter:      (Yes or No)      __Yes__
       List language and/or dialect      __Spanish__

4.     This case will take      __15__ days for the parties to try.

5.     Please check appropriate category and type of offense listed below:

(Check only one)

| I   | 0 to 5 days   | _____ |
| II  | 6 to 10 days  | _____ |
| III | 11 to 20 days | __X__  |
| IV  | 21 to 60 days | _____ |
| V   | 61 days and over | _____ |

(Check only one)

| Petty  | _____ |
| Minor  | _____ |
| Misdem. | _____ |
| Felony | __X__ |

6.     Has this case been previously filed in this District Court?   (Yes or No)   __Yes__
If yes:
Judge:   __William J. Zloch__                Case No.   __16-60340-CR-WJZ__
(Attach copy of dispositive order)
Has a complaint been filed in this matter?      (Yes or No)      __No__
If yes:
Magistrate Case No.      _____
Related Miscellaneous numbers:   _____
Defendant(s) in federal custody as of   _____
Defendant(s) in state custody as of   _____
Rule 20 from the_____District of _____
Is this a potential death penalty case? (Yes or No)   _____Yes   __X__ No

7.     Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   _____ Yes   __X__ No

8.     Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?   _____ Yes   __X__ No

RANDALL D. KATZ
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0112036
*Penalty Sheet(s) attached

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**: <u>Marco Laureti</u>

**Case No**: _____

Count #: 1

<u>Conspiracy to Commit Wire Fraud Affecting a Financial Institution</u>

<u>Title 18, United States Code, Section 1349</u>

**\* Max. Penalty:** (30) thirty years' imprisonment; up to (5) five years' supervised release; fine: up to $250,000 or not more than the greater of twice the gross gain or twice the gross loss.

Counts #: 2-9

<u>Wire Fraud Affecting a Financial Institution</u>

<u>Title 18, United States Code, Section 1343</u>

**\*Max. Penalty:** (30) thirty years' imprisonment; up to (5) five years' supervised release; fine: up to $250,000 or not more than the greater of twice the gross gain or twice the gross loss.

Count #:

_____

_____

**\*Max. Penalty:**

Count #:

_____

_____

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: <u>Felix Mostelac a/k/a Felix Mostelac Trujillo</u>

**Case No**: _____

Count #: 1

<u>Conspiracy to Commit Wire Fraud Affecting a Financial Institution</u>

<u>Title 18, United States Code, Section 1349</u>

\* **Max. Penalty:** (30) thirty years' imprisonment; up to (5) five years' supervised release; fine: up to $250,000 or not more than the greater of twice the gross gain or twice the gross loss.

Counts #: 2-4

<u>Wire Fraud Affecting a Financial Institution</u>

<u>Title 18, United States Code, Section 1343</u>

\***Max. Penalty:** (30) thirty years' imprisonment; up to (5) five years' supervised release; fine: up to $250,000 or not more than the greater of twice the gross gain or twice the gross loss.

Counts #:7-9

<u>Wire Fraud Affecting a Financial Institution</u>

<u>Title 18, United States Code, Section 1343</u>

\***Max. Penalty:** (30) thirty years' imprisonment; up to (5) five years' supervised release; fine: up to $250,000 or not more than the greater of twice the gross gain or twice the gross loss.

Count #:

\***Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.