
SUPPORT DOCS

## "As Is" Sale and Purchase Contract
FLORIDA ASSOCIATION OF REALTORS®

1*   **1. SALE AND PURCHASE:** 1800 Sunset Harbour _____ ("Seller")
2*   and Felix Mostelac _____ ("Buyer")
3    agree to sell and buy on the terms and conditions specified below the property described as:
4*   Address: _____ 1800 Sunset Harbour Drive 785, Miami Beach, FL 33139 _____
5*   _____ County: _____
6*   Legal Description: _____
7                                                                 Tax ID No: _____
8    together with all improvements and attached items, including fixtures, built-in furnishings, built-in appliances, ceiling fans,
9    light fixtures, attached wall-to-wall carpeting, rods, draperies and other window coverings. The only other items included
10*  in the purchase are: _____
11*  _____
12*  _____
13*  The following attached items are excluded from the purchase: _____
14*  _____
15   The real and personal property described above as included in the purchase is referred to as the "Property." Personal property
16   listed in this Contract is included in the purchase price, has no contributory value and is being left for Seller's convenience.

17                                              **PRICE AND FINANCING**
18*  **2. PURCHASE PRICE:**         $ 6,500,000.00     payable by Buyer in U.S. currency as follows:
19*  (a) $         50,000.00        Deposit received (checks are subject to clearance) _____ by
20*                                 _____ for _____ ("Escrow Agent")
21                                              Signature                Name of Company
22*  (b) $         50,000.00        Additional deposit to be delivered to Escrow Agent by _____
23*                                 or _____ days from Effective Date. (10 days if left blank).
24*  (c) _____            Total financing (see Paragraph 3 below) (express as a dollar amount or percentage)
25*  (d) $ _____            Other: _____
26*  (e) $ _____            Balance to close (not including Buyer's closing costs, prepaid items and prorations). All funds
27                                 paid at closing must be paid by locally drawn cashier's check, official bank check or wired funds.

28   **3. FINANCING:** (Check as applicable)
29*  ☒ (a) Buyer will pay cash for the Property with no financing contingency.
30*  ☐ (b) Buyer will apply for the financing specified in Paragraph 2(c) at the prevailing interest rate and loan costs based on
31*  Buyer's creditworthiness (the "Financing") within _____ days from Effective Date (5 days if left blank) and provide Seller
32*  with a written Financing commitment or approval letter ("Commitment") within _____ days from Effective Date (30 days if
33   left blank) ("Commitment Period"). Buyer will keep Seller and Broker fully informed of the loan application status, progress
34   and Commitment issues and authorizes the lender and mortgage broker to disclose all such information to Seller and
35   Broker. Once Buyer provides the Commitment to Seller, the financing contingency is waived and Seller will be entitled to
36   retain the deposits if the transaction does not close by the Closing Date unless (1) the Property appraises below the
37   purchase price and either the parties cannot agree on a new purchase price or Buyer elects not to proceed, or (2) another
38   provision of this Contract requires the deposits to be returned. If Buyer, using diligence and good faith, cannot provide the
39   Commitment within the Commitment Period, this Contract will be terminated and Buyer's deposits refunded.

40                                                  **CLOSING**
41   **4. CLOSING DATE; OCCUPANCY:** Unless extended by other provisions of this Contract, this Contract will be closed on
42*  _____ May 30 _____, 2007 _____ ("Closing Date") at the time established by the closing agent, by which time Seller will (a) have
43   removed all personal items and trash from the Property and swept the Property clean and (b) deliver the deed, occupancy
44   and possession, along with all keys, garage door openers and access codes, to Buyer. If on Closing Date insurance
45   underwriting is suspended, Buyer may postpone closing up to 5 days after the insurance suspension is lifted. If this
46   transaction does not close for any reason, Buyer will immediately return all Seller-provided title evidence, surveys,
47   association documents and other items.

48*  Buyer (FM)(____) and Seller (FL)(____) acknowledge receipt of a copy of this page, which is Page 1 of 8 Pages.
49   ASIS-8  Rev. 10/04  © 2004 Florida Association of REALTORS®  All Rights Reserved

**GOVERNMENT EXHIBIT**
AO386-C
CASE NO. 16-60340-CR-BB
EXHIBIT NO. 1B

50  **5. CLOSING PROCEDURE; COSTS:** Closing will take place in the county where the Property is located and may be conducted
51  by mail or electronic means. If title insurance insures Buyer for title defects arising between the title binder effective date and
52  recording of Buyer's deed, closing agent will disburse at closing the net sale proceeds to Seller and brokerage fees to Broker as
53  per Paragraph 19. In addition to other expenses provided in this Contract, Seller and Buyer will pay the costs indicated below.
54  (a) **Seller Costs:** Seller will pay taxes and surtaxes on the deed and recording fees for documents needed to cure title;
55* Other: _____
56  (b) **Buyer Costs:** Buyer will pay taxes and recording fees on notes and mortgages; recording fees on the deed and
57  financing statements; loan expenses; lender's title policy; inspections; survey; flood insurance; home warranty plan;
58* Other: _____
59  (c) **Title Evidence and Insurance:** Check (1) or (2):
60* ☐ (1) The title evidence will be a Paragraph 10(a)(1) owner's title insurance commitment as title evidence. ☐ Seller ☐ Buyer
61* will select the title agent. ☐ Seller ☐ Buyer will pay for the owner's title policy, search, examination and related charges.
62  Each party will pay its own closing fees.
63* ☐ (2) Seller will provide an abstract as specified in Paragraph 10(a)(2) as title evidence. ☐ Seller ☐ Buyer will pay for the
64  owner's title policy and select the title agent. Seller will pay fees for title searches prior to closing, including tax search
65  and lien search fees, and Buyer will pay fees for title searches after closing (if any), title examination fees and closing fees.
66  (d) **Prorations:** The following items will be made current (if applicable) and prorated as of the day before Closing Date: real
67  estate taxes, interest, bonds, assessments, association fees, insurance, rents and other current expenses and revenues of the
68  Property. If taxes and assessments for the current year cannot be determined, the previous year's rates will be used with
69  adjustment for exemptions and improvements. Buyer is responsible for property tax increases due to change in ownership.
70  (e) **Special Assessment by Public Body:** Regarding special assessments imposed by a public body, Seller will pay (i) the full
71  amount of liens that are certified, confirmed and ratified before closing and (ii) the amount of the last estimate of the assessment
72  if an improvement is substantially completed as of Effective Date but has not resulted in a lien before closing, and Buyer will pay
73  all other amounts.
74  (f) **Tax Withholding:** Buyer and Seller will comply with the Foreign Investment in Real Property Tax Act, which may require
75  Seller to provide additional cash at closing if Seller is a "foreign person" as defined by federal law.

76  **PROPERTY CONDITION**
77* **6. INSPECTION PERIODS:** Buyer will complete any and all inspections of the Property by _____ May 18 _____, 2007
78  (within 10 days from Effective Date if left blank) ("Inspection Period"): the walk-through inspection on the day before Closing
79* Date or any other time agreeable to the parties; and the survey referenced in Paragraph 10(c) by _____, _____
80  (at least 5 days prior to closing if left blank).

81  **7. REAL PROPERTY DISCLOSURE:** Seller represents that Seller does not know of any facts that materially affect the value of
82  the Property, including but not limited to violations of governmental laws, rules and regulations, other than those that Buyer
83  can readily observe or that are known by or have been disclosed to Buyer.
84  (a) **Energy Efficiency:** Buyer acknowledges receipt of the energy-efficiency information brochure required by Section
85  553.996, *Florida Statutes*.
86  (b) **Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient
87  quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and
88  state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be
89  obtained from your county public health unit. Buyer may, within the Inspection Period, have an appropriately licensed
90  person test the Property for radon. If the radon exceeds acceptable EPA standards, Seller may choose to reduce the radon
91  level to an acceptable EPA level, failing which either party may cancel this Contract.
92  (c) **Flood Zone:** Buyer is advised to verify by survey, with the lender and with appropriate government agencies which
93  flood zone the Property is in, whether flood insurance is required and what restrictions apply to improving the Property and
94  rebuilding in the event of casualty. If the Property is in a Special Flood Hazard Area or Coastal High Hazard area and the
95  buildings are below the minimum flood elevation, Buyer may cancel this Contract by delivering written notice to Seller
96  within 20 days from Effective Date, failing which Buyer accepts existing elevation of the buildings and zone designation of
97  the Property.
98  (d) **Homeowners' Association:** If membership in a homeowners' association is mandatory, an association disclosure
99  summary is attached and incorporated into this Contract. BUYER SHOULD NOT SIGN THIS CONTRACT UNTIL BUYER
100 HAS RECEIVED AND READ THE DISCLOSURE SUMMARY.
101 (e) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
102 PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT BUYER MAY BE OBLIGATED TO PAY IN THE YEAR
103 SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS
104 REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY
105 QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR FURTHER
106 INFORMATION.
107* Buyer (__) (____) and Seller (__) (____) acknowledge receipt of a copy of this page, which is Page 2 of 6 Pages.
ASIS-8 Rev. 10/04 © 2004 Florida Association of REALTORS® All Rights Reserved

JMPC4368-00411

108 (f) **Mold:** Mold is part of the natural environment that, when accumulated in sufficient quantities, may present health risks to
109 susceptible persons. For more information, contact the county indoor air quality specialist or other appropriate professional.

110 **8. As Is With Right to Inspect:** Seller makes no warranties other than marketability of title. Seller will keep the Property in the
111 same condition from Effective Date until closing, except for normal wear and tear ("maintenance requirement"), and will
112 convey the Property in its "as is" condition with no obligation to make any repairs.

113 (a) **Inspection Right; Seller Obligations:** Buyer may, at Buyer's expense, conduct professional and walk-through inspections
114 as described below. If Buyer fails to timely conduct any inspection which Buyer is entitled to make under this paragraph,
115 Buyer waives the right to the inspection and accepts the Property "as is." Seller will provide access and utilities for Buyer's
116 inspections. Buyer will repair all damages to the Property resulting from the inspections and return the Property to its pre-
117 inspection condition.

118 (b) **Professional Inspections:** The inspection(s) will be by a person who specializes in and holds an occupational license (if
119 required by law) to conduct home inspections or who holds a Florida license to repair and maintain the items inspected.

120* (c) **Cancellation Right:** Buyer may cancel this Contract by written notice to Seller within _____15_____ days (within 5 days if left
121 blank) from the end of the Inspection Period if the estimated cost of treatment and repairs determined to be necessary by
122* Buyer is greater than $10,000.00_____. For the cancellation to be effective, Buyer must include in the written notice a
123 copy of the inspector's written report, if any, and treatment and repair estimates from the inspector or person(s) holding an
124 appropriate Florida license to repair the items inspected. Any conditions not reported in a timely manner will be deemed
125 acceptable to Buyer.

126 (d) **Walk-through Inspection:** Buyer may walk through the Property solely to verify that Seller has fulfilled the contractual
127 obligations. No other issues may be raised as a result of the walk-through inspection.

128 **9. RISK OF LOSS:** If any portion of the Property is damaged by fire or other casualty before closing and can be restored
129 within 45 days from the Closing Date to substantially the same condition as it was on Effective Date, Seller will, at Seller's
130 expense, restore the Property and the Closing Date will be extended accordingly. Seller will not be obligated to replace trees.
131 If the restoration cannot be completed in time, Buyer may accept the Property "as is" with existing damage, in which case
132 Seller will credit the deductible and assign the insurance proceeds, if any, to Buyer at closing in such amounts as are (i)
133 attributable to the Property and (ii) not yet expended in making repairs and (iii) sufficient to restore the Property to its "as is"
134 condition as of the Effective Date, failing which either party may cancel this Contract. If the Property is a condominium, this
135 paragraph applies only to the unit and limited common elements appurtenant to the unit; if the Property is in a homeowners'
136 association, this paragraph will not apply to common elements or recreation or other facilities.

### TITLE

138 **10. TITLE:** Seller will convey marketable title to the Property by statutory warranty deed or trustee, personal representative or
139 guardian deed as appropriate to Seller's status.

140 (a) **Title Evidence:** Title evidence will show legal access to the Property and marketable title of record in Seller in
141 accordance with current title standards adopted by the Florida Bar, subject only to the following title exceptions, none of
142 which prevent residential use of the Property: covenants, easements and restrictions of record; matters of plat; existing
143 zoning and government regulations; oil, gas and mineral rights of record if there is no right of entry; current taxes;
144 mortgages that Buyer will assume; and encumbrances that Seller will discharge at or before closing. Seller will deliver to
145 Buyer Seller's choice of one of the following types of title evidence, which must be generally accepted in the county where
146 the Property is located (specify in Paragraph 5(c) the selected type). Seller will use option (1) in Palm Beach County and
147 option (2) in Miami-Dade County.

148 (1) A title insurance commitment issued by a Florida-licensed title insurer in the amount of the purchase price and
149 subject only to title exceptions set forth in this Contract and delivered no later than 2 days before Closing Date.

150 (2) An existing abstract of title from a reputable and existing abstract firm (if firm is not existing, then abstract must be
151 certified as correct by an existing firm) purporting to be an accurate synopsis of the instruments affecting title to the
152 Property recorded in the public records of the county where the Property is located and certified to Effective Date.
153 However if such an abstract is not available to Seller, then a prior owner's title policy acceptable to the proposed insurer
154 as a base for reissuance of coverage. Seller will pay for copies of all policy exceptions and an update in a format
155 acceptable to Buyer's closing agent from the policy effective date and certified to Buyer or Buyer's closing agent,
156 together with copies of all documents recited in the prior policy and in the update. If a prior policy is not available to
157 Seller then (1) above will be the title evidence. Title evidence will be delivered no later than 10 days before Closing Date.

158 (b) **Title Examination:** Buyer will examine the title evidence and deliver written notice to Seller, within 5 days from receipt of
159 title evidence but no later than closing, of any defects that make the title unmarketable. Seller will have 30 days from
160 receipt of Buyer's notice of defects ("Curative Period") to cure the defects at Seller's expense. If Seller cures the defects
161 within the Curative Period, Seller will deliver written notice to Buyer and the parties will close the transaction on Closing
162 Date or within 10 days from Buyer's receipt of Seller's notice if Closing Date has passed. If Seller is unable to cure the
163 defects within the Curative Period, Seller will deliver written notice to Buyer and Buyer will, within 10 days from receipt of

164* Buyer (🖋)(____) and Seller (🖋)(____) acknowledge receipt of a copy of this page, which is Page 3 of 6 Pages.
ASIS-8 Rev. 10/04 © 2004 Florida Association of REALTORS® All Rights Reserved

JMPC4368-00412

165 Seller's notice, either cancel this Contract or accept title with existing defects and close the transaction.
166 (c) **Survey:** Buyer may, at Buyer's expense, have the Property surveyed and deliver written notice to Seller, within 5 days
167 from receipt of survey but no later than closing, of any encroachments on the Property, encroachments by the Property's
168 improvements on other lands or deed restriction or zoning violations. Any such encroachment or violation will be treated in
169 the same manner as a title defect and Buyer's and Seller's obligations will be determined in accordance with
170 subparagraph (b) above. If any part of the Property lies seaward of the coastal construction control line, Seller will provide
171 Buyer with an affidavit or survey as required by law delineating the line's location on the property, unless Buyer waives this
172 requirement in writing.

173 **MISCELLANEOUS**
174 **11. EFFECTIVE DATE; TIME:** The "Effective Date" of this Contract is the date on which the last of the parties initials or signs
175 the latest offer. Time is of the essence for all provisions of this Contract. All time periods will be computed in business days (a
176 "business day" is every calendar day except Saturday, Sunday and national legal holidays). If any deadline falls on a Saturday,
177 Sunday or national legal holiday, performance will be due the next business day. All time periods will end at 5:00 p.m. local
178 time (meaning in the county where the Property is located) of the appropriate day.

179 **12. NOTICES:** All notices will be made to the parties and Broker by mail, personal delivery or electronic media. Buyer's failure to
180 deliver timely written notice to Seller, when such notice is required by this Contract, regarding any contingencies will render
181 that contingency null and void and the Contract will be construed as if the contingency did not exist. Any notice, document
182 or item given to or received by an attorney or Broker (including a transaction broker) representing a party will be as effective
183 as if given to or by that party.

184 **13. COMPLETE AGREEMENT:** This Contract is the entire agreement between Buyer and Seller. Except for brokerage
185 agreements, no prior or present agreements will bind Buyer, Seller or Broker unless incorporated into this Contract.
186 Modifications of this Contract will not be binding unless in writing, signed or initialed and delivered by the party to be bound.
187 This Contract, signatures, initials, documents referenced in this Contract, counterparts and written modifications
188 communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten
189 or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or
190 becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. Buyer and Seller will use diligence
191 and good faith in performing all obligations under this Agreement. This Contract will not be recorded in any public records.

192 **14. ASSIGNABILITY; PERSONS BOUND:** Buyer may ~~not~~ assign this Contract without Seller's written consent. The terms
193 "Buyer," "Seller," and "Broker" may be singular or plural. This Contract is binding on the heirs, administrators, executors,
194 personal representatives and assigns (if permitted) of Buyer, Seller and Broker.

195 **DEFAULT AND DISPUTE RESOLUTION**
196 **15. DEFAULT:** (a) **Seller Default:** If for any reason other than failure of Seller to make Seller's title marketable after diligent effort,
197 Seller fails, refuses or neglects to perform this Contract, Buyer may choose to receive a return of Buyer's deposit without
198 waiving the right to seek damages or to seek specific performance as per Paragraph 16. Seller will also be liable to Broker for
199 the full amount of the brokerage fee. (b) **Buyer Default:** If Buyer fails to perform this Contract within the time specified, including
200 timely payment of all deposits, Seller may choose to retain and collect all deposits paid and agreed to be paid as liquidated
201 damages or to seek specific performance as per Paragraph 16; and Broker will, upon demand, receive 50% of all deposits
202 paid and agreed to be paid (to be split equally among cooperating brokers except when closing does not occur due to Buyer
203 not being able to secure Financing after providing a Commitment, in which case Broker's portion of the deposits will go solely
204 to the listing broker) up to the full amount of the brokerage fee.

205 **16. DISPUTE RESOLUTION:** This Contract will be construed under Florida law. All controversies, claims, and other matters in
206 question arising out of or relating to this transaction or this Contract or its breach will be settled as follows:
207 (a) **Disputes concerning entitlement to deposits made and agreed to be made:** Buyer and Seller will have 30 days from
208 the date conflicting demands are made to attempt to resolve the dispute through mediation. If that fails, Escrow Agent
209 will submit the dispute, if so required by Florida law, to Escrow Agent's choice of arbitration, a Florida court or the Florida
210 Real Estate Commission. Buyer and Seller will be bound by any resulting award, judgment, or order.
211 (b) **All other disputes:** Buyer and Seller will have 30 days from the date a dispute arises between them to attempt to
212 resolve the matter through mediation, failing which the parties will resolve the dispute through neutral binding arbitration
213 in the county where the Property is located. The arbitrator may not alter the Contract terms or award any remedy not
214 provided for in this Contract. The award will be based on the greater weight of the evidence and will state findings of fact
215 and the contractual authority on which it is based. If the parties agree to use discovery, it will be in accordance with the
216 Florida Rules of Civil Procedure and the arbitrator will resolve all discovery-related disputes. Any disputes with a real
217 estate licensee named in Paragraph 19 will be submitted to arbitration only if the licensee's broker consents in writing to
218 become a party to the proceeding. This clause will survive closing.
219 (c) **Mediation and Arbitration; Expenses:** "Mediation" is a process in which parties attempt to resolve a dispute by
220 submitting it to an impartial mediator who facilitates the resolution of the dispute but who is not empowered to impose a
221* Buyer (___)(___) and Seller (___)(___) acknowledge receipt of a copy of this page, which is Page 4 of 6 Pages.
ASIS-3 Rev. 10/04 ©2004 Florida Association of REALTORS® All Rights Reserved

222 settlement on the parties. Mediation will be in accordance with the rules of the American Arbitration Association ("AAA")
223 or other mediator agreed on by the parties. The parties will equally divide the mediation fee, if any. "Arbitration" is a
224 process in which the parties resolve a dispute by a hearing before a neutral person who decides the matter and whose
225 decision is binding on the parties. Arbitration will be in accordance with the rules of the AAA or other arbitrator agreed on
226 by the parties. Each party to any arbitration will pay its own fees, costs and expenses, including attorneys' fees, and will
227 equally split the arbitrators' fees and administrative fees of arbitration.

228                                    **ESCROW AGENT AND BROKER**

229 **17. ESCROW AGENT:** Buyer and Seller authorize Escrow Agent to receive, deposit and hold funds and other items in escrow
230 and, subject to clearance, disburse them upon proper authorization and in accordance with Florida Law and the terms of this
231 Contract, including disbursing brokerage fees. The parties agree that Escrow Agent will not be liable to any person for
232 misdelivery of escrowed items to Buyer or Seller, unless the misdelivery is due to Escrow Agent's willful breach of this
233 Contract or gross negligence. If Escrow Agent interpleads the subject matter of the escrow, Escrow Agent will pay the filing
234 fees and costs from the deposit and will recover reasonable attorneys' fees and costs to be paid from the escrowed funds or
235 equivalent and charged and awarded as court costs in favor of the prevailing party. All claims against Escrow Agent will be
236 arbitrated, so long as Escrow Agent consents to arbitrate.

237 **18. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify all facts and representations that
238 are important to them and to consult an appropriate professional for legal advice (for example, interpreting contracts,
239 determining the effect of laws on the Property and transaction, status of title, foreign investor reporting requirements, etc.) and
240 for tax, property condition, environmental and other specialized advice. Buyer acknowledges that Broker does not reside in the
241 Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records.
242 Buyer agrees to rely solely on Seller, professional inspectors and governmental agencies for verification of the Property
243 condition, square footage and facts that materially affect Property value. Buyer and Seller respectively will pay all costs and
244 expenses, including reasonable attorneys' fees at all levels, incurred by Broker and Broker's officers, directors, agents and
245 employees in connection with or arising from Buyer's or Seller's misstatement or failure to perform contractual obligations. Buyer
246 and Seller hold harmless and release Broker and Broker's officers, directors, agents and employees from all liability for loss or
247 damage based on (1) Buyer's or Seller's misstatement or failure to perform contractual obligations; (2) Broker's performance, at
248 Buyer's and/or Seller's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including
249 Broker's referral, recommendation or retention of any vendor; (3) products or services provided by any vendor; and (4) expenses
250 incurred by any vendor. Buyer and Seller each assume full responsibility for selecting and compensating their respective vendors.
251 This paragraph will not relieve Broker of statutory obligations. For purposes of this paragraph, Broker will be treated as a party to
252 this Contract. This paragraph will survive closing.

253 **19. BROKERS:** The licensee(s) and brokerage(s) named below are collectively referred to as "Broker." Instruction to Closing
254 Agent: Seller and Buyer direct closing agent to disburse at closing the full amount of the brokerage fees as specified in separate
255 brokerage agreements with the parties and cooperative agreements between the brokers, except to the extent Broker has
256 retained such fees from the escrowed funds. In the absence of such brokerage agreements, closing agent will disburse
257 brokerage fees as indicated below. This paragraph will not be used to modify any MLS or other offer of compensation made by
258 Seller or listing broker to cooperating brokers.

259* _____
260* Selling Sales Associate/License No. _____   Selling Firm/Brokerage Fee: ($ or % of Purchase Price) _____
261* _____
262* Listing Sales Associate/License No. _____   Listing Firm/Brokerage Fee: ($ or % of Purchase Price) _____

263                                 **ADDENDA AND ADDITIONAL TERMS**
264 **20. ADDENDA:** The following additional terms are included in addenda and incorporated into this Contract (check if applicable):

| | | | |
|---|---|---|---|
| ☐ A. Condo. Assn. | ☐ H. As-Is w/Right to Inspect | ☐ O. Interest-Bearing Account | ☐ V. Prop. Disclosure Stmt. |
| ☐ B. Homeowners' Assn. | ☐ I. Inspections | ☐ P. Back-up Contract | ☐ W. FIRPTA |
| ☐ C. Seller Financing | ☐ J. Insulation Disclosure | ☐ Q. Broker - Pers. Int. in Prop. | ☐ X. 1031 Exchange |
| ☐ D. Mort. Assumption | ☐ K. Pre-1978 Housing Stmt.(LBP) | ☐ R. Rentals | ☐ Y. Additional Clauses |
| ☐ E. FHA Financing | ☐ L. Insurance | ☐ S. Sale/Lease of Buyer's Property | ☐ Other _____ |
| ☐ F. VA Financing | ☐ M. Housing Older Persons | ☐ T. Rezoning | ☐ Other _____ |
| ☐ G. New Mort. Rates | ☐ N. Unimproved/Ag. Prop. | ☐ U. Assignment | ☐ Other _____ |

272* **21. ADDITIONAL TERMS:** _____
273* _____
274* _____
275* _____
276* _____

277* Buyer (✓) (___) and Seller (✓) (___) acknowledge receipt of a copy of this page, which is Page 5 of 6 Pages.
ASIS-9 Rev. 10/04 © 2004 Florida Association of REALTORS® All Rights Reserved

```
278* _____
279* _____
280* _____
281* _____
282* _____
283* _____
284* _____
285* _____
286* _____
287* _____
288* _____
289* _____
290* _____
291* _____
292* _____
293* _____
294* _____
295* _____
296* _____
297* _____
298* _____
299* _____
300* _____
301* _____
```

302   This is intended to be a legally binding contract. If not fully understood, seek the advice of an attorney prior to signing.
303                                                OFFER AND ACCEPTANCE
304* (Check if applicable:  ☐ Buyer received a written real property disclosure statement from Seller before making this Offer.)
305  Buyer offers to purchase the Property on the above terms and conditions. Unless this Contract is signed by Seller and a copy
306* delivered to Buyer no later than _____ ☐ a.m. ☐ p.m. on _____, this offer will be revoked
307  and Buyer's deposit refunded subject to clearance of funds.

308* Date: _____  Buyer: _____
309*                         Print name: Felix Mostelac

310* Date: _____  Buyer: _____
311* Phone: _____  Print name: _____
312* Fax: _____    Address: _____
313* E-mail: _____

314* Date: _____  Seller: _____
315*                         Print name: 1800 Sunset Harbour

316* Date: _____  Seller: _____
317* Phone: _____  Print name: _____
318* Fax: _____    Address: _____
319* E-mail: _____

320                                                OFFER AND ACCEPTANCE
321* ☐ Seller counters Buyer's offer (to accept the counter offer, Buyer must sign or initial the counter offered terms and deliver a copy
322* of the acceptance to Seller by 5:00 p.m. on _____, _____). ☐ Seller rejects Buyer's offer.

323* Effective Date: _____ (The date on which the last party signed or initialed acceptance of the final offer.)

324* Buyer (FM)(____) and Seller (FL)(____) acknowledge receipt of a copy of this page, which is Page 6 of 6 Pages.

The Florida Association of REALTORS® and local Board/Association of REALTORS® make no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark that may be used only by real estate licensees who are members of the National Association of REALTORS® and who subscribe to its Code of Ethics.
The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of blank forms by any means including facsimile or computerized forms.

ASIS-5  Rev. 10/04   © 2004 Florida Association of REALTORS®   All Rights Reserved