**PURCHASE AGREEMENT**
**45 Hendricks Condominium**

Date <u>01/09/2007</u>.



**ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE DEVELOPER. FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS CONTRACT AND THE DOCUMENTS REQUIRED BY SECTION 718.503, FLORIDA STATUTES, TO BE FURNISHED BY DEVELOPER TO A PURCHASER OR LESSEE.**

This Purchase Agreement ("Agreement") is made and entered into by and between High Point, L.L.C., a Florida Limited Liability Company ("Seller"), and the purchaser(s) named below ("Purchaser" or "Buyer").

Purchaser:   Hector Corzo and/or Assigns

Residence Address:

City:Sunny Isles Beach                    State: Florida              Zip:

Country:                                   Social Security No.:

Home Telephone:                            Work Telephone:

Local Telephone:                           Fax Telephone:

E-mail:

Name, address and telephone number where all purchaser's notices are to be mailed or phone, if different:

Name (c/o):

Street Address:

City:                                      State:

Country:                                   Zip Code:

Telephone:                                 Fax Telephone:

E-mail:

Seller agrees to sell and Purchaser agrees to buy the following described property according to the terms and conditions hereinafter set forth: (Note: The Unit has/has not previously been occupied).

A.   **The Property.**  Unit No. ___2B___ (the "Unit"), of 45 Hendricks Condominium_(the "Condominium") together with appurtenances therein including an undivided interest in the Common Elements of the Condominium.  The Unit and the Condominium are described in greater detail in the Declaration of Condominium (the "Declaration") included in the Prospectus and its attached exhibits (the "Condominium Documents").  Purchaser shall acknowledge receipt of the Condominium Documents simultaneously herewith by executing the Receipt for Condominium Documents, DBPR Form CO 6000-6, accompanying this Agreement.  Neither the terms of this Section A nor the terms of Section E herein shall operate in lieu of the execution by Purchaser of DBPR Form CO 6000-6.

B.   **Purchase Price.**  The Purchase Price of the Unit has been determined as follows:

| | |
|---|---|
| Basic Purchase Price | $1,700,000.00 |
| Plus or minus any adjustments, as set forth on attached Addendum (if any) | $ |
| Total Purchase Price | $1,700,000.00 |

The Total Purchase Price of the Unit shall be paid as follows:

| | |
|---|---|
| Deposit paid this date | $25,000.00 |
| Additional Deposit      Due 01 /25/2007 | $25,000.00 |
| Balance to be paid in cash or by cashier's check at time of Closing (subject to credits, adjustments and prorations). | $1,650,000.00 |
| Total Purchase Price | $1,700,000.00 |

1



AO386-C
**GOVERNMENT EXHIBIT**

CASE NO. 16-60340-CR-BB

EXHIBIT NO. 2B

**Make all checks payable to Smith and Supraski, P.A. Trust Account.**
**Deposits are accepted subject to collection.**
**Please refer to article I of the STANDARD PROVISIONS attached hereto for information regarding additional closing costs including the one and seven tenths percent (1.7%) closing charge.**

     C. **Mortgage.**
This is an all cash transaction, and it is not contingent upon or subject to the purchaser obtaining a mortgage.

     D. **Closing Date.** The Unit is completed as of this date and the closing shall be held on or before May 31, 2007.

     E. **Standard Provisions as Additional Terms and Conditions.** It is acknowledged and agreed by the parties hereto, that this Agreement is comprised of and does include the content and provisions of this page, plus "Standard Provisions" consisting of Paragraphs F through CC, inclusive. A copy of the Standard Provisions has been received, read, approved and accepted by Purchaser and the content and provisions are incorporated herein as a part hereof as if fully set forth herein. The Standard Provisions shall bear no addition, deletion or other modifications, or, should any appear thereon, they shall be invalid and of no force or effect. Any additions, deletions or other modifications to this Agreement shall be made solely by notation upon this signature page or by formally executed riders or addenda hereto. Prior receipt, approval, acceptance, inclusion and the binding validity of the "Standard Provisions" is fully and freely acknowledged by all the parties hereto. Purchaser shall additionally and specifically sign the last page of the Standard Provisions.

**THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER, AND RECEIPT BY BUYER OF ALL OF THE ITEMS REQUIRED TO BE DELIVERED TO HIM OR HER BY THE DEVELOPER UNDER SECTION 718.503, FLORIDA STATUTES. THIS AGREEMENT IS ALSO VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF RECEIPT FROM THE DEVELOPER OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO THE BUYER. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 15 DAYS AFTER THE BUYER HAS RECEIVED ALL OF THE ITEMS REQUIRED. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.**

     1.    By executing the Receipt for Condominium Documents, DBPR Form CO 6000-6, accompanying this Agreement, Purchaser shall acknowledge that, simultaneously with the execution of this Agreement, all of the statutory information to be delivered to Purchaser concerning this Condominium, as required by the Act or as otherwise legally required (the "Governing Documents"), is being delivered to Purchaser, the receipt of which shall thereby be acknowledged by Purchaser. The terms and conditions of the Governing Documents are hereby incorporated by reference into this Agreement. Purchaser agrees to read and become familiar with the Governing Documents referred to in this Paragraph E prior to the expiration of the period in which Purchaser may cancel this Agreement under Paragraph E and to rely solely on these Governing Documents to the exclusion of all other written or oral representations in deciding whether or not to exercise the right to cancel under Paragraph E. Purchaser has fifteen (15) days from the date indicated on the signature page on which Purchaser executes this Agreement to exercise the right of cancellation set forth in Paragraph E above, by delivering written notice to Seller at 18401 Collins Avenue, Sunny Isles Beach, Florida 33160 (which is the place for giving any notices to Seller under this Agreement). Purchaser agrees that the Governing Documents may be changed or amended, if necessary, to meet the requirements of a mortgagee, public authority or title insurance company. Purchaser agrees to be bound by the terms of the Governing Documents, to acquire the Condominium Unit subject thereto and to execute any documents required to implement the same.

     2.    Seller may make changes in the Condominium Documents in its sole discretion by providing Purchaser with all such amendments that are made, provided that, as to these changes, Purchaser will have fifteen (15) days from the date of receipt of such changes from Seller which materially alter or modify the offering of the Condominium in a manner adverse to Purchaser in which to cancel this Agreement (by delivering written notice to Seller of such cancellation, which notice must set forth how Purchaser believes the changes adversely affect Purchaser) and receive a refund of any deposits with interest if interest was actually earned on such deposits. Seller will be relieved of all obligations under this Agreement when Seller refunds the deposits and interest if applicable. Purchaser will not be permitted to prevent Seller from making any change it wishes in its sole discretion, nor to pursue any remedy other than the 15-day cancellation remedy described above (and then only for the kind of changes that materially alter or modify the offering in a manner that is adverse to Purchaser). If Purchaser has the right to cancel this Agreement by reason of a change which is material and adverse to Purchaser's interest, Purchaser's failure to

2

JPMC1618-00745

request cancellation in writing within the 15-day period will mean that Purchaser accepts the change and irrevocably waives Purchaser's right to so cancel.  All rights of cancellation will terminate, if not sooner, then absolutely at closing.  After closing, Purchaser will have no remedy for any changes Seller may make or has made.  Seller's right to make changes pursuant to this Paragraph is subject to the limitations set forth in Section 718.110(4) and (8), F.S.

3.  If this Agreement is canceled for any reason, Purchaser will return to Seller all of the Condominium Documents delivered to Purchaser in the same condition received, reasonable wear and tear excepted.  If Purchaser fails to return the Condominium Documents, Purchaser agrees to pay Seller One Hundred Dollars ($100.00) to defray the cost of preparation, printing and delivery of said documents.

**SELLER:**

High Point, L.L.C., a Florida Limited Liability Company

By: _____
Name: Michael La Chapelle
Title: Manager

Date of Execution:  01/09/2007

**PURCHASER(S)**

_____(SEAL)
Hector Corzo and/or Assigns
Date of Execution:

Date of Execution: 01/09/2007

3

JPMC1618-00746

## **Standard Provisions**

F. **Escrow.** All deposits shall be held strictly in escrow with Union Bank of Florida and disbursed by: Smith and Supraski, P.A., 2450 N.E. Miami Gardens Drive, 2nd Floor, North Miami Beach, Florida 33180 ("Escrow Agent") in accordance with the applicable terms and conditions of this Agreement, Chapter 718, Florida Statutes (the "Act") and the terms of the Escrow Agreement contained in the Condominium Documents. The Escrow Agreement is incorporated into this Agreement as if repeated at length here.

The Escrow Agent shall give Purchaser a receipt for any and all such deposits upon request. **Except in the case of Seller's default under this Agreement, all interest earned on deposits shall accrue solely for the benefit of and become the property of Seller, without credit for interest to Purchaser.**

G. **Conveyance.** Title to the Unit shall be good, marketable and insurable and shall be conveyed by Seller to Purchaser by Special Warranty Deed, free and clear of all encumbrances and matters except:

1.   Covenants, laws, conditions, restrictions, reservations, limitations and easements of record.

2.   Terms and conditions of the Declaration of Condominium of 45 Hendricks Condominium ("Declaration") together with all Exhibits thereto, and Amendments thereof including but not limited to the Articles of Incorporation and By-laws of 45 Hendricks Condominium Association, Inc. ("Association").

3.   Liability for all real property taxes and assessments for the year in which the transaction is closed and subsequent years.

4.   Any Mortgage executed by Purchaser, which encumbers the Unit.

5.   Liens for work done or material furnished at the request of Purchaser.

6.   Applicable zoning ordinances and regulations, and pending liens for public improvements.

7.   The standard printed exceptions contained in the ALTA Form owner's policy of title insurance issued for Broward County, Florida, including, but not limited to, standard exceptions for waterfront property.

H. **Proof of Title.** Seller shall cause delivery to the Purchaser at the time of closing of an ALTA Owner's title insurance commitment ("Commitment") issued by a title insurer licensed to do business in Florida in an amount equal to the Total Purchase Price. The tender by the Seller to the Purchaser of the Commitment, subject only to the exceptions set forth in this Agreement, shall be proof that the title to the Property is good, marketable and insurable. An Owner's title insurance policy ("Policy") will be issued by the title insurer and delivered to Purchaser subsequent to the closing and the recording of all the documents in accordance with the terms of the Commitment. If, for any reason, the Seller is unable to deliver a Commitment or Policy without defects in Seller's title, the Seller shall not be obligated to cure any objections or defects in title, but shall be afforded a reasonable time [not less than ninety (90) days] within which to cure any objections or defects in title. If Seller does not timely cure such objections or defects, the Purchaser must either (a) accept title in its then existing condition without any reduction in the Total Purchase Price (Purchaser agreeing to waive all claims against Seller for such defects); or (b) terminate this Agreement and accept a refund of all sums paid by Purchaser in accordance with this Agreement. Upon the Purchaser's acceptance of a refund of the deposit, if such shall arise, the Seller shall be forever released and discharged of any and all further liability to Purchaser and this Agreement shall terminate and be of no further force and effect. In no event shall Seller be required to deliver any Abstract of Title or a survey to the Purchaser.

I. **Closing of the Transaction.** This transaction shall be closed on the date designated by the Seller. The term "closing" refers to the time when Seller delivers the deed to the Unit to the Purchaser and ownership changes hands. The Common Elements or other parts or buildings of the Condominium need not have certificates of occupancy or completion nor need be completed prior to closing. At closing, Purchaser shall pay the cash due at closing and execute and deliver all instruments required to close this transaction. Should Purchaser fail to do all acts and to execute all instruments necessary to close this transaction on the designated closing date, the Seller may declare this Agreement to be in default, or, at its option, designate a new closing date, in which event the Purchaser shall pay to the Seller interest at the highest rate permitted by law on the Total Purchase Price from the originally designated date of closing to and including the date of

Initials:

JPMC1618-00747

closing as subsequently determined by Seller.

The closing shall be held at the Seller's office or such other location as Seller may designate. Purchaser shall be given at least five (5) days' notice of the date, time and place of closing. Seller is authorized to postpone the closing for any reason and Purchaser shall close on the new date, time and place specified in a notice of postponement [as long as at least three (3) days' notice of the new date, time and place is given]. A change of time or place of closing only (one not involving a change of date) shall not require any additional notice period. Any formal notice of closing, postponement or rescheduling may be given orally, by telephone, telegraph, telex, facsimile, mail or other reasonable means of communications at Seller's option. All of these notices shall be sent or directed to the address on Page 1 of this Agreement unless Seller has received written notice from Purchaser of any change prior to the date the notice is given. These notices will be effective on the date given or mailed (as appropriate). An affidavit of one of Seller's employees or agents stating that this notice was given or mailed shall be conclusive. Unless Purchaser notifies Seller in writing within ten (10) days of Purchaser's execution of this Agreement that Purchaser has elected otherwise, Purchaser hereby selects Bay Title Company as its title insurance agent for purposes of issuing Purchaser's owner policy and the simultaneous issue mortgagee policy, if Purchaser mortgages its interest in the Unit.

If Purchaser fails to receive any of these notices or the confirmation because Purchaser failed to advise Seller of any change of address or phone, telecopy or telex number, because Purchaser has failed to pick up a letter when he has been advised of an attempted delivery or because of any other reason, Purchaser shall not be relieved of his obligation to close on the scheduled date unless Seller agrees in writing to postpone the scheduled date. If Seller agrees in writing to reschedule closing at Purchaser's request, or if Purchaser is a corporation and Purchaser fails to produce the necessary corporate papers Seller requests and, as a result, closing is delayed, or if closing is delayed for any other reason (except for a delay desired, requested or caused by Seller), Purchaser agrees to pay at closing a late funding charge equal to interest, at the then highest applicable lawful rate, on that portion of the Total Purchase Price not then paid to Seller (and cleared), from the date Seller originally scheduled closing to the date of actual closing. All prorations except Condominium Association Assessments will be made as of the originally scheduled date. Condominium Association Assessments shall be prorated as of the actual date of closing. **Purchaser understands that Seller is not required to reschedule or to permit a delay in closing.**

The Purchaser agrees that whenever he is called upon to do so, he shall execute all instruments as are required by Seller to implement this Agreement and consummate this transaction, including but not limited to such additional instruments as may be required by the Mortgage Lender (if applicable).

In addition to the Total Purchase Price the Purchaser shall pay the following costs and expenses at closing:

1.    An amount equal to one and seven-tenths percent (1.70 %) of the Total Purchase Price which shall cover the cost of recording of the deed, documentary stamps for the deed, owners title insurance commitment and policy charges and/or premiums, plus administrative expenses and costs for closing of the Seller. The foregoing one and seven-tenths percent (1.70 %) closing charge is based on the assumption that documentary stamp taxes on the special warranty deed will be, at closing, at the rate of $.70 for each $100.00 of Total Purchase Price, and that the cost of title insurance will be based, at closing, on the minimum rates promulgated by the Florida Insurance Commissioner as of July 1, 2002. In the event of changes in either or both of the foregoing, appropriate additional charges (in the case of increases) or credits (in the case of decreases) will be paid by or credited to Purchaser at closing. The closing charge of the unit amounts to $_____.

2.    The Condominium Association Assessment against the Unit for common expenses, prorated from the date of closing to the first day of the next succeeding assessment period. The initial monthly assessment of the Unit is $717.86

3.    Initial capital contributions to 45 Hendricks Condominium Association, Inc. in an amount equal to two (2) monthly assessments, which amount is $1,435.72.

4.    Real estate taxes and other expenses and revenues of the Property shall be prorated as of the closing date in a reasonable manner as proscribed by the Developer.

5.    Surtax, if any, due in connection with the transfer of the Unit or any limited common elements appurtenant thereto. Presently, there is no Broward County surtax on transfers

Initials:

JPMC1618-00748

of residential real property.

      6.     Pending liens for public improvements, if any, shall be assumed by Purchaser.

      7.     Loan fees, closing costs, prepayments, plus all other charges and expenses charged by the Buyer's mortgage lender, if any. If Buyer obtains a loan and elects to have Seller's closing agent act as "loan" closing agent as well, Buyer agrees to pay, in addition to any other sums described in this Agreement, such closing agent an aggregate sum equal to $750.00 plus reimbursement of applicable costs, for the agent's title examination, title searching and closing services related to acting as "loan closing agent". The amount of all lender's charges is now unknown. Notwithstanding the reference to loan costs or assistance or cooperation by Seller or Seller's closing agent, Buyer understands and agrees that the closing is NOT contingent upon Buyer obtaining a loan and Buyer is obligated to close whether or not Buyer can obtain financing. The amount of this charge is now unknown.

      8.     Any utility deposits or charges, which may be applicable to the Unit, including reimbursement to Seller for any, advance deposits. The amount of this charge is now unknown.

      9.     The late funding charges provided for elsewhere in this Agreement, if any.

      10.    Reimbursement to Seller and/or Seller's closing agents, for charges incurred in connection with coordinating closing with Purchaser and/or Purchaser's lender, including, without limitation, charges for messenger expenses, long distance telephone calls, photocopying expenses, telecopying charges and others. The amount of these charges is unknown at the present time.

      J.  **Disclosure and Disclaimer of Warranties.**  1. Except for any warranties contained in the deed of conveyance and any warranties pursuant to the Act (the "Sole Warranties"), to the maximum extent lawful no other warranties, guarantees, promises, express or implied, have been made to or relied upon by Purchaser in making the determination to execute and close pursuant to this Agreement. The Purchaser hereby acknowledges that he has personally reviewed the Condominium Documents furnished to him and found both the Property and the Condominium, as described herein, acceptable and suitable for his purposes, that he has relied upon his own judgment in making such determinations, and that there were no warranties, guarantees or promises, expressed or implied, with respect to the Property or the Condominium by any of the agents, employees or representatives of the Seller or any independent contractor of the Seller except those which have been specifically set forth in this Agreement and the Condominium Documents together with all exhibits thereto.

      **2.    Purchaser agrees that Seller (and its employees, agents, brokers and other representatives) to the maximum extent lawful makes no additional warranty, representation or undertaking of any kind, express or implied, and, that the Sole Warranties shall be in lieu of any other warranty, express or implied, including but not limited to, any implied warranty of merchantability, habitability, quality or fitness for a particular purpose. As to any implied warranty which may not be disclaimed entirely, all secondary, incidental and consequential damages are specifically excluded and disclaimed (claims for such secondary, incidental and consequential damages being unavailable in the case of implied warranties which are disclaimed above).** Purchaser agrees that, except as provided herein, Purchaser is buying and shall accept possession of the Unit in the condition it is in at the time of Purchaser's inspection thereof. Seller shall have no further liability or obligation whatsoever with respect to the Unit, common elements, fixtures, items of personal property or other real or personal property, or the condition or construction of any of the foregoing, or any occurrence directly or indirectly arising therefrom.

**FLORIDA LAW CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY FILE A LAWSUIT FOR DEFECTIVE CONSTRUCTION AGAINST A CONTRACTOR, SUBCONTRACTOR, SUPPLIER, OR DESIGN PROFESSIONAL FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR HOME. SIXTY DAYS BEFORE YOU FILE YOUR LAWSUIT, YOU MUST DELIVER TO THE CONTRACTOR, SUBCONTRACTOR, SUPPLIER, OR DESIGN PROFESSIONAL A WRITTEN NOTICE OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE YOUR CONTRACTOR AND ANY SUBCONTRACTORS, SUPPLIERS, OR DESIGN PROFESSIONALS THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND MAKE AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER MADE BY THE CONTRACTOR OR ANY SUBCONTRACTORS, SUPPLIERS, OR DESIGN PROFESSIONALS. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER FLORIDA LAW.**

      3.    Notwithstanding anything to the contrary in this Agreement, Purchaser acknowledges and agrees that Seller shall be irreparably harmed if Purchaser undertakes the repair or replacement of any defective portion of the Unit, common elements, fixtures, items of personal

Initials: _____

6

JPMC1618-00749

property or any other real or personal property in connection with the Unit during the time in which the Sole Warranties remain in effect. Accordingly, Purchaser hereby agrees: (i) to promptly, upon Purchaser's knowledge of the existence of any such defective portion, provide written notice to Seller specifying each such defective portion, upon the receipt of which Seller shall have thirty (30) days ("Repair Period") to commence to repair or replace such defective portion and diligently pursue the completion thereof; and (ii) not to repair, replace or otherwise adjust any such defective portion during the Repair Period; provided, however, that if Seller fails to commence the repair or replacement of such defective portion within the Repair Period, Purchaser may repair or replace same. If Purchaser fails to comply with the provisions of this Paragraph J, Purchaser will be deemed to have breached his or her obligation to mitigate damages and Purchaser's conduct shall constitute an aggravation of damages.

4.    It is hereby agreed that the maximum liability of Seller under the Sole Warranties shall be the replacement cost of the defective portion of the Unit, common elements, fixtures, items of personal property or other real or personal property. Seller shall have the sole right to determine whether the defect shall be corrected by repair or replacement. In no event shall Seller be liable to Purchaser or Association or any other person or entity for consequential or exemplary damages, or for personal injuries arising from any breach of the Sole Warranties.

5.    Purchaser hereby acknowledges that: (i) the Sole Warranties shall not apply if the defective portion of the Unit, common elements, fixtures or any other real or personal property has resulted from or been caused by, in whole or in part, the misuse of same (whether intentional or unintentional) by any person, firm or entity other than Seller or from an accident, casualty or physical alteration or modification; and (ii) the Sole Warranties are further conditioned upon routine maintenance being performed, unless such maintenance is an obligation of Seller or a Seller-controlled association.

6.    The terms of this Paragraph J shall be deemed to survive the closing of the purchase of the Unit. It is binding on Seller and Purchaser and on their respective successors and assigns.

7.    Upon closing, Seller shall deliver to Purchaser all manufacturers' warranties, if any, covering the consumer products to be conveyed to Purchaser hereunder, provided, however, that **Seller shall not thereby be deemed to warrant any such consumer product in any way, either expressed or implied, or to adopt any such manufacturers' warranty. Seller gives no express warranty on those items defined as "Consumer Products" by the Magnuson-Moss Warranty Act.**

K.  **Default by Seller.** If the Seller fails to perform any of the covenants made by it or any terms and provisions of this Agreement required by it to be performed the Purchaser shall notify the Seller of such default. If Seller has not cured such default within ten (10) days of receipt of such notice, Purchaser shall have the right either to the return of its deposit or to specific performance of this Agreement. Purchaser shall have no other remedies available hereunder, at law or in equity in the event of any default by Seller hereunder.

L.  **Default by Purchaser.** If Purchaser fails to perform any of the covenants and obligations made by him or any of the terms and provisions of this Agreement required by him to be performed or fails to execute and deliver any instrument required by Seller or any lender providing Mortgage financing or otherwise fails to comply with any of the requirements on the part of the Purchaser to be performed hereunder, the Purchaser shall be in default and the Seller may declare this Agreement terminated and declare all deposits and monies paid hereunder as liquidated and agreed upon damages since the amount of actual damages is incapable of ascertainment. Upon such occurrence, Purchaser's rights under this Agreement shall end and Seller may resell the Unit without any accounting to Purchaser, and Purchaser shall not file any action against Seller seeking the return of any portion of the payments made under this Agreement or any reduction in the amount of such liquidated damages. This provision has been specifically agreed upon by the parties because a default on the part of the Purchaser would have serious adverse financial effects upon the Seller as a result of increased costs, expenses and fees having been incurred by Seller, and by its having lost the opportunity to sell the Unit to other prospective purchasers. The remedies afforded Seller in this paragraph constitute Seller's exclusive remedies in case of Buyer's default.

M.  **Completion and Occupancy of the Unit.** Purchaser hereby acknowledges and agrees that sound transmission in a building such as the Condominium is very difficult to control, and that noises from adjoining or nearby Units and or mechanical equipment can often be heard in other Units. Without limiting the generality of paragraph J, Seller does not make any representation or warranty as to the level of sound transmission between and among Units and the other portions of the Condominium Property, and Purchaser hereby waives and expressly releases any such warranty and claim for loss or damages resulting from sound transmission.

Purchaser authorizes Seller to arrange for the applicable utility company to turn the

Initials: _____

JPMC1618-00750

electric power on for Purchaser's Unit prior to closing in order to allow Seller to test all electrical systems and charge the air-conditioning system so that they will be operable for Purchaser's inspection.

Purchaser agrees to be responsible for any electric bill provided that such bill shall not exceed the sum of Twenty-Five Dollars ($25.00). If Seller is required to post any deposits with the applicable utility company, those deposits will be assigned to Purchaser a closing, and Purchaser will reimburse Seller for the amount of same.

The agreements and waivers of Purchaser contained in this paragraph will survive closing.

N. **Full Disclosure.** The Purchaser has executed, or shall execute simultaneously herewith, a "Receipt for Condominium Documents", a copy of which is attached hereto and made a part hereof, wherein Purchaser has or shall acknowledge receipt of copies of the Condominium Documents.

O. **Completion of Condominium Property.** Seller shall have complete discretion in finishing details, landscaping, amenities and beautification of the Condominium Property, and Seller may exercise such discretion without impediment. Renderings contained in brochures or sales material shall not be construed as representations of the Seller.

Purchaser understands and agrees that certain items such as the following, which may be seen in models (if any) or in illustrations, are not included with the sale of the Unit: wall coverings (including paint other than base primer), accent light fixtures, wall ornaments, drapes, blinds, furniture, knickknacks and other decorator accessories, lamps, mirrors, graphics, pictures, plants, wall-hung shelves, wet bars, intercoms, kitchen accessories, linens, window shades, security systems, certain built-in fixtures, certain styles or types of carpets or other floor coverings and colors, wood trim, other upgrades items, balcony treatments (e.g. tile, brick, chattahoochee, scored concrete or wood trim), barbecues, planters, window screens, landscaping and any other items of this nature which may be added or deleted by Seller from time to time. This list of items (which is not all-inclusive) is provided as an illustration of the type of items built-in or placed upon the models (if any) or shown in illustrations strictly for the purpose of decoration and example only. Items such as these will not be included in the Unit unless specifically provided for in a Rider or Schedule to this Agreement signed by both Purchaser and Seller. Certain of these items may not even be available. In the event that Seller does provide any of these or other items, however, Purchaser agrees to accept them, although not requested by Purchaser, as long as Purchaser is not required to pay for such items. There is no obligation for Seller to provide models, but if so provided, the foregoing disclaimers will apply.

Purchaser further understands and agrees that certain items, if included with the Unit, such as tile, cabinets, wood stain, grout, wall and ceiling textures, cultured marble, marble, mica and carpeting, are subject to size and color variations, grain and quality variations, and may vary in accordance with price, availability and changes by manufacturer from those shown in the models or in illustrations or included in Seller's Plans and Specifications or in the published list of standard items (if any). If circumstances arise which, in Seller's opinion, warrant changes of suppliers, manufacturers, brand names or items, Seller may substitute equipment, material, appliances, etc., with items which in Seller's opinion are of equal or better quality (regardless of cost). Purchaser also understands and acknowledges that Seller has the right to substitute or change materials and/or stain colors utilized in wood decor (if any). Purchaser recognizes that certain colors as shown in displays or in the models, including, but not limited to, carpeting and wood stain, will weather and fade and may not be duplicated precisely.

Purchaser will have reasonable opportunity to inspect the Unit before closing. One of Seller's agents will accompany Purchaser. Purchaser shall have no right to delay closing as a result of the inspection.

Purchaser agrees to proceed with the closing of title even if defects are not corrected by closing date. In addition, Purchaser agrees not to hold back any part of the purchase price or impose any conditions on the closing.

P. **Entire Agreement**. This Agreement contains the entire agreement between the parties hereto. No promise, representation, warranty or covenant not included in this Agreement has been or is relied on by either party. Each party has relied on its own examination of this Agreement and the provisions hereof, the counsel of its own advisers. The failure or refusal of either party to review the Agreement or other documents, or the failure to obtain legal or other advice relevant to this transaction, constitutes a waiver of any objection, contention or claim that might have been based on such reading, inspection or advice. No modification or amendment to this Agreement shall be of any force or effect unless in writing and executed by the Purchaser (which shall mean any one of the persons named as Purchasers herein) and by the Seller.

Initials:

JPMC1618-00751

Q. **Binding Effect and Assignment.**   Purchaser may not assign its rights under this Agreement without the prior written approval of the Seller, which approval may be arbitrarily withheld.   If two or more persons are named as Purchaser herein, any one of them is authorized to act as agent for, with the right to bind, the other(s) in all matters of every kind or nature with respect to this Agreement.   This Agreement and the terms and provisions hereof shall inure to the benefit of and be binding upon the heirs, personal representatives, successors and assigns of the parties hereto.   Seller may transfer or assign at any time or times the right and obligations it has under this Agreement, in which event such transferee and assignee shall be substituted in place of the Seller under this Agreement, and it shall be entitled to the benefits of and may enforce Purchaser's covenants, representations and warranties hereunder.   On any such transfer or assignment by Seller, the Seller's liability and obligations hereunder or under any instruments, documents or agreements made pursuant hereto shall be binding on such transferee and Seller shall be relieved of all liability hereunder.

R. **Notice.**   Notices and correspondence between Seller and Buyer shall be by certified mail, return receipt requested, to the addresses appearing on Page 1 and 2 of this Agreement.

S. **Time of Essence.**   Time shall be of the essence of this Agreement.

T. **Risk of Loss.**   If the improvements constituting the Condominium are damaged by fire or other casualty before delivery of the Warranty Deed and can be restored to substantially the same condition within a period of one hundred eighty (180) days thereafter, the Seller shall have the option to restore the improvements and the closing date hereunder shall be extended for a similar period, if necessary.   If Seller fails to restore said damage within said one hundred eighty (180) days, then Purchaser shall be entitled to receive the return of all sums paid hereunder and all parties shall be released from any and all obligations and liabilities as a result of this Agreement.

U. **Recording of this Agreement.**   Seller and Purchaser agree that neither this Agreement nor any short-form summary hereof shall be recorded among the Public Records of Broward County, Florida, unless both parties mutually agree, in writing, to the contrary.   Any attempt to do so by Purchaser shall constitute an express default hereunder by Purchaser.

V. **Governing Law.**   This Agreement shall be governed by the laws of the State of Florida and venue shall be exclusively in Broward County, Florida.

W. **Radon Gas.**   Under the laws of the State of Florida, Purchaser is hereby advised that radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time.   Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.   The foregoing notice is provided in order to comply with state law and is for informational purposes only.   Seller does not conduct radon testing with respect to the Units or the Condominium, and specifically disclaims any and all representations or warranties as to the absence of radon gas or radon producing conditions in connection with the Condominium.

X. **Attorney's Fees and Costs.**   In the event either party hereto shall institute legal proceedings in connection with, or for the enforcement of, this Agreement, the prevailing party shall be entitled to recover its costs of suit, including reasonable attorney's fees, at both trial and appellate levels.

Y. **Management Agreements.**

1. The Board of Directors of the Association may (and does intend to) enter into a contract with any firm, person or corporation in contracting for the management, maintenance and repair of the Condominium Property. The Board of Directors is authorized to delegate to such management firm all of the powers and duties of the Association which are contained in any such agreement between the parties.

2. The Association and each Unit Owner, their heirs, successors and assigns, shall be bound by any future Management Agreement to the same extent as if he had executed said Management Agreement.

Z. **Restrictions on Resale Prior to Closing.**

Purchaser acknowledges and agrees that seller's ability to sell other units owned by seller within the condominium and the value of such units owned by seller will be diminished and harmed by purchaser attempting to resell the unit through local brokers or advertising the unit for sale in

Initials:

JPMC1618-00752

publications in the general area where the unit is located, prior to purchaser receiving fee simple title to the unit and that the seller shall be irreparably harmed by such actions. Therefore purchaser covenants and agrees not to enter into any listing agreement for the sale of the unit or to advertise, or cause the unit to be advertised for sale prior to obtaining fee simple title to the unit. A breach of this provision shall be a default hereunder by purchaser entitling Seller to exercise its remedies under this agreement.

AA. **Seller's Use of the Condominium Property.** As long as Seller owns a Unit or Units, it and its agents can keep offices and model Units within the Condominium Property or Association Property. Seller's salespeople can show these Units, erect advertising signs and do whatever else is necessary in Seller's opinion to help sell or lease Units or develop the Condominium Property or Association Property, but Seller's use of the Condominium Property or Association Property must be reasonable, in Seller's opinion, and may not unreasonably interfere, in Seller's opinion, with Purchaser's use and enjoyment of the Unit. This paragraph will survive closing.

BB. **Sales Commissions.** Seller will pay all sales commissions due the broker with which Seller has contracted for services ("Seller's Broker"), if any, and Pinnacle Consulting LLC ("Purchaser's Broker"). Purchaser represents and warrants to Seller that Purchaser has not dealt with, nor has the sale been procured by, any real estate broker, salesman or finder, other than Seller's Broker and Purchaser's Broker. Purchaser will indemnify Seller against all claims made against Seller by any other brokers or sales agents (and agrees also to pay all costs and attorneys' fees actually incurred by Seller because of these claims). Purchaser understands and agrees that Seller's Broker represents the interests of, and is employed by, Seller. This disclosure is made pursuant to, and in accordance with, Rule 21B-10.033, F.A.C. as promulgated by the Florida Real Estate Commission. This paragraph will survive closing.

CC. **Miscellaneous.**

The Developer shall be excused from the payment of its share of the Common Expenses which would have been assessed against those Units owned by the Developer, for a period of four (4) months commencing upon the closing of title of the first unit conveyed and ending four (4) months thereafter (the "Assessment Guarantee Period"). The Developer shall have the right to extend the termination date of the Assessment Guarantee Period for four (4) additional periods of three (3) months each. During the Assessment Guarantee Period the Developer guarantees to each Unit Owner that their Assessment payment to the Association shall not increase above the following amounts, which amounts include reserves:

ASSESSMENT GUARANTEE PERIOD

|  | I | II | III | IV | V |
|---|---|---|---|---|---|
| Models B and C | $717.86 | $717.86 | $717.86 | $727.86 | $727.86 |
| Models A and D | $968.53 | $968.53 | $968.53 | $978.53 | $978.53 |
| Models E and F | $1,529.84 | $1,529.84 | $1,529.84 | $1,539.84 | $1,539.84 |

During the Assessment Guarantee Period if at any time the funds collected from Unit Owner Assessments at the guaranteed level are not sufficient to provide payment on a timely basis, of all Common Expenses, the Developer shall advance sufficient cash to the Association at the time such payments are due.

This Agreement may be executed in any number of counterparts which together shall constitute the agreement of the parties. The effective date of this Agreement is the date of execution by Seller indicated above. The paragraph headings herein contained are for purposes of identification only and shall not be considered in construing this Agreement. Whenever used herein, the singular shall include the plural, the plural the singular and the use of any gender shall include all genders as appropriate.

Purchaser shall not enter upon the Condominium Property until Seller has offered and Purchaser has accepted possession thereof. Any prior entry shall be a default under this Agreement, and Purchaser agrees to indemnify and hold Seller harmless from any loss or damage which Seller may incur arising directly or indirectly from such prior entry including all attorneys fees and costs at both trial and appellate levels.

This Agreement is subject and subordinate to the lien of any construction, land or land improvement mortgage by Seller, whether executed prior or subsequent to the execution of this Agreement, affecting the Unit (and any advances thereon), without Purchaser's execution of any further documents, provided any such mortgage shall be released as to the condominium property upon closing. The proceeds of this sale may be used to obtain such release.

For the purpose of completing the construction and servicing of the Unit and the common areas, including any improvements constituting a part thereof, Seller hereby reserves an

Initials:

JPMC1618-00753

easement of ingress and egress for Seller and its successors and assigns, and each of their respective agents, employees, materialmen and subcontractors, over, under and upon the Condominium Property.

All definitions contained in the Act are adopted herein and reference to any defined term herein is intended to have the meaning set forth in the Act.

All pronouns and words used in this Agreement shall be read in the appropriate number and gender, the masculine, feminine and neuter shall be interpreted interchangeably and the singular shall include the plural and vice versa, as the circumstances may require.

**NOTE: Before Purchaser signs this Agreement, Purchaser should read it and the Condominium Documents carefully. Purchaser is advised that this Agreement contains references to certain closing costs (paragraph I), information regarding selling agents (paragraph BB), strict limitations on Purchaser's rights upon Seller's default (paragraph K), disclaimers of warranty liability (paragraph J) and the right of Seller to make changes in the unit sold to Purchaser (paragraph M). Seek professional advice.**

Purchaser(s)

_____

Hector Corzo and/or Assigns

11

JPMC1618-00754