## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CASE NO.:**16-60340-CR-Bloom(s) (Cohn) |
| ) | |
| **MARCO LAURETI** ) | |
| ) | |
| **Defendant.** ) | |
| —————————————— ) | |

### SENTENCING MEMORANDUM
### OF DEFENDANT MARCO LAURETI

Marco Laureti, by and through his attorney, respectfully submits his sentencing memorandum for this Honorable Court's consideration in determining the appropriate sentence for him in this case:

**A. Introduction:**

Mr. Laureti will appear before this Court for sentencing on January 25, 2018. The Court has the authority and responsibility to determine the appropriate period of time Marco Laureti will be confined. Undoubtedly, there will be those that urge the Court to show no mercy. They will want the Court to sentence Mr. Laureti to 20 years or more. It does not matter to them that a sentence of 20 years or more is likely to be the equivalent of a life sentence. They simply are not concerned about that in the least. Let him rot in jail. The undersigned respectfully suggests that the issue should be justice. What did

Marco Laureti actually do? What is just punishment? What is a human life worth? What will a sentence of 20 years or more accomplish that **a sentence of 5 or 6 years** will not? Only a person who is not going to have to serve such a sentence, would think that it is not devastatingly long in duration.

Mr. Laureti has been incarcerated for 3 months. He describes it as being locked in the garage of your home. Others occasionally come and go but you are not ever permitted to leave. After a few days you have had enough. After a few weeks you pray the nightmare will end. After a few months you become numb and start to lose hope. This sentencing memorandum is written with the hope that it will be of some assistance to this Honorable Court in exercising its discretion with regard to a just sentence as to Mr. Laureti.

## B. Superseding Indictment:

Marco Laureti and Felix Mostelac were charged by way of a superseding indictment alleging in Count 1 that they conspired to commit bank fraud. The indictment also charged 8 counts of bank fraud arising form 8 mortgage loans obtained from Washington Mutual Bank ("WAMU") in the spring of 2007 on 6 properties. Four of the properties were condominium units located at 45 Hendricks Isle. One property was located at E. San Marino Drive and the final property was located at Sunset Harbor.

Mr. Laureti elected to exercise his Constitutional right to a jury trial. At the trial Mr. Laureti presented evidence that he purchased the home on E. San Marino Drive and he contributed the money to purchase one of the condo units at 45 Hendrix Isle for his then father-in-law, Jorge De La Cruz. Mr. Laureti used Galen Frizzie from Gordon

Lending as his mortgage broker.  Mr. Laureti testified that he did not authorize Galen Frizzie to submit false information to WAMU with the Uniform Residential Mortgage Loan Applications for either of these properties.  However, Galen Frizzie testified that he only submitted to WAMU what Marco Laureti supplied him to submit. The jury found Mr. Laureti guilty on these two counts.

At trial Mr. Laureti testified that he had nothing to do with Mostelac's purchase of his apartment located on Sunset Harbor Drive.  Mr. Laureti was not at the closing and he did not receive any money from Mostelac.  The jury found Mr. Laureti **not** guilty on this count (Count two).

Finally, Mr. Laureti testified that he had an option to purchase 3 units at 45 Hendricks Isle at 2005/2006 preconstruction prices. He got the option from Luis De Agostino, the developer of 45 Hendricks Isle.  Mr. Laureti was looking to find someone to buy the 3 units.  Mr. Laureti was introduced to Mr. Mostelac. Mostelac held himself out as a wealthy businessman from Spain. He had 3 investors that would purchase the three units at 2007 fair market value prices.  However, Mr. Mostelac wanted to split the profits generated from the option. An agreement was reached and the option was held by Mostelac and Mr. Laureti on a 50/50 basis.

Mr. Mostelac's 3 investors were Hector Corzo, Pedro Melian and Eneida Ramirez. Mr. Laureti did not know at the time that each of these "investors" were asked by Mostelac to be straw buyers.  Mr. Laureti proved at trial that Mostelac had previously used Eneida Ramirez as a straw buyer to buy a condo unit at The Mark on Brickell Avenue in Miami.  Mostelac used Galen Frizzie to submit the uniform residential loan

application to the bank. Despite knowing about the mortgage debt on this property, Frizzie falsified the Ramirez loan application to purchase Unit PHF at 45 Hendricks Isle by omitting the entire debt, this amounted to hundreds of thousands of dollars of debt being concealed from the bank. Mostelac used Michelle Cabrera to do his closings.

The government called Hector Corzo, Pedro Melian and Eneida Ramirez as witnesses. Each said that they were straw buyers. Corzo stated that he saw Mr. Laureti at his closing but did not remember speaking with him. He was asked to be a straw buyer by Yordanska Linares and Mostelac. Eneida Ramirez said that she never met Mr. Laureti. She stated that her son Pedro Melian asked her to be a straw buyer. Pedro Melian stated that he was a straw buyer and both Mostelac and Laureti knew it. Mr. Laureti stated that he met Pedro Melian after the closing took place and did not know that he was a straw buyer until much later. Mr. Laureti and Mostelac split the funds generated from the option strike price being lower than the selling price of each of these 3 units. Each unit was appraised by George Hollbrook, an appraiser selected by WAMU.

Galen Frizzie testified on direct examination that he did not speak Spanish. He also said that Mostelac spoke primarily Spanish. As a result, any time Frizzie needed information for any of the loan applications, he called Mr. Laureti. Frizzie stated that Mr. Laureti would send him the requested information. However, on cross examination, Galen Frizzie admitted that he did not know who faxed him the information and further the fax number reflected on the documents that he received was not Mr. Laureti's fax number. Mr. Frizzie had assumed the information came from Mr. Laureti. In reality, Mr. Laureti called Mostelac who spoke with his investors and faxed the information directly

to Frizzie. Mr. Laureti never saw the information or documents sent to Frizzie by Mostelac.

On direct examination, Michelle Cabrera stated that Mr. Laureti told her to disburse the cash to close for the 3 straw buyers a day early because they did not have the money to close. However, on cross examination, Cabrerra admitted that it was Mostelac that told her to disburse the funds early and to send the funds for the Ramirez and Melian closings to Mr. Laureti's bank account and not his (i.e. Mostelac's).

The jury found Mr. Laureti guilty of bank fraud on each of the loans on these 3 units. Two of the units had two mortgage loans. As a result, Mr. Laureti was convicted of one count of conspiracy to commit bank fraud and seven counts of bank fraud. He was found **not** guilty on one count of bank fraud (Count 2).


## C.  18 U.S.C. Section 3553(a) - "*Booker*" factors:

Title 18 U.S.C. Section 3553(a) provides the factors to be considered in imposing a sentence in a Federal criminal case. Section 3553(a) provides:

"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider-

(1) the nature and circumstances of the history and characteristics of the offenses and the defendant;

(2) the need for the sentence imposed-

(A)   to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational, vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) * * * the sentencing range established [by the guidelines]; * * *

(5) any pertinent policy statement - * * *;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense".

Each of the factors set forth in Section 3553(a) are discussed below.

**(1) The Nature and Circumstances of the:**

**(A) History and Characteristics of the Offenses.**

Mr. Laureti held a real estate agent license and a mortgage broker license in 2007. At that time the real estate market was very strong and prices had been climbing for nearly 4 years in a row. Mr. Laureti did not know that the entire real estate sector would crash in the spring of 2008. Mr. Laureti believed in good faith that each of the 6 properties listed in the indictment would continue to go up in value and that they could be sold in a few years for a profit after repaying the bank in full. Unfortunately, the crash of

2008 occurred and property values plummeted to a fraction of what they were in the spring of 2007. Mostelac and his 3 investors decided to walk away from the properties and stopped making the mortgage payments. Mr. Laureti continued to make the mortgage payments on his home and the unit he purchased for his then father-in-law, De La Cruz. During 2008 and 2009, Mr. Laureti's income from his real estate business was virtually non-existent. Mr. Laureti tried to modify the mortgage but the bank refused. Ultimately, the bank sold the mortgage note on Mr. Laureti's home to a third party who foreclosed and the unit in the name of Jorge De La Cruz was sold in a short sale authorized by WAMU. The loss sustained by WAMU for the 5 properties (excluding the loss on the Mostelac home) was approximately $7.5 million.

### (B) History and Characteristics of the Defendant:

The nature and circumstances of the history and characteristics of the defendant as required by Section 3553(a) are set forth below. Marco Laureti is 46 years old. He is divorced from Giovanna De La Cruz. They have three small children. Despite a contentious divorce, all parties agree that Marco is an exceptional father. He has never been convicted of any crime. He has a reputation amongst the people who know him of being generous and compassionate. He greatly values his children and friends.

A large number of family and friends have written letters to this Honorable Court to provide the Court with an understanding of the individual who the Court will sentence. Each of these persons is aware of the charges in which Mr. Laureti has been found guilty by the jury. They have been informed that the Federal Sentencing Guidelines suggest

that a very long sentence may be applicable in this type of case. Nonetheless, each has taken the time to write to the Court in the hope that they might be able to provide valuable insight as to the man Mr. Laureti is. Attached hereto as Composite Exhibit "A" are the letters of:

1. Ilan A. Nieuchowicz            2. Federico Laureti

3. Herminia Laureti              4. Cristina Liviero

5. Lisa Blake                    6. Jose M. Vazquez

7. Melanie Hyer                  8. Daniel S. Burdak

9. John Olsen                    10. Walter Maino, Jr.

Mr. Laureti hopes that the Court will factor into its decision the thoughts and comments of the people in the community that know him best.

**(2) The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment for the Offense, Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant.**

The sentence imposed should be sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct and protect the public from future crimes of the Defendant. It is respectfully suggested that a **sentence in the range of 72 months** meets each of these objectives. A review of the sentences rendered in recent comparable criminal cases has yielded several cases within and below this range. These cases include the following:

i.    *United States v. Roca, 12-20588-CR-SEITZ (S.D. FL 2013);* wherein Judge Moreno sentenced Robert Roca to **36 months**. Defendant Roca was ordered to pay restitution of $1.99 million.

ii.   *United States v. Fahra, 8:11-CR-115-T-30-MAP (M.D. FL 2014);* wherein Defendant was sentenced to **36 months** for a $30 million healthcare fraud. The Court rejected the Government's request of 150 months based upon the Federal Sentencing Guidelines.

iii.  *United States v. Persaud, 6:13-CR-25-ORL-36DAB (M.D. FL 2013);* wherein Defendant was sentenced to **36 months** for mail fraud arising from a $1 million Ponzi scheme. Defendant was ordered to pay $948,000 in restitution.

iv.   *United States v. Kitterman, 13-60220-CR-HURLEY (S.D. FL 2014);* wherein Defendant was sentenced to **60 months** for 3 counts of wire fraud relating to a Ponzi scheme in excess of $1 billion.

v.    *United States v. Berkman, 13-CRIM-477 (S.D. NY 2013);* wherein Defendant was sentenced to **72 months** for securities and wire fraud that defrauded 120 investors of $13.2 million.

vi.   *United States v. Schiller, 13-CR-693 (N.D. IL 2014);* wherein Defendant was sentenced to **78 months** and ordered to pay $5.3 million in restitution arising from a $10 million Ponzi scheme.

vii.  *United States v. Arthur Schlect, 12-20588-CR-RWG;* following a one month trial, the Defendant was sentenced to **120 months** for defrauding

investors of approximately $50 million using a scheme that involved more than 10 people.   In rejecting the government's request for a guideline sentence of 262 months the Court stated:

" The loss amount enhances the sentence to 262 months. Per the guideline source book for a criminal history Category 1, a sentence of **262 months is 32 months greater than the mean federal sentence for murder in 2013,** and 229 months greater than the mean federal sentence for fraud in 2013." At page 92. See excerpt attached hereto as Exhibit "B".

viii    *United States v Luis F. Perez, 10-20584-CR and 10-20411-CR (S.D. FL 2011);* wherein Defendant was sentenced to **120 months** for defrauding investors of $40 million using a Ponzi scheme. The Defendant used millions of dollars to purchase numerous luxury automobiles (including Rolls Royce, Bentley, Ferrari, and Maserati), trips by private jets, lavish homes, jewelry, vacations, furs and more.   The scheme was a complete fraud with no business purpose.

ix.    *United States v. French, 9:12-80212-CR-RYSCAMP (S.D. FL 2013);* wherein the defendant described by the Court as a "junior Bernie Madoff" was sentenced to **120 months** for a $10 million Ponzi scheme.

x.    *United States v. Livoti, 08-21158-CR-SCOLA-4 (S.D. FL 2014);* wherein Defendant was sentenced to **120 months** for an $826 million fraud and money laundering scheme.

The cases set forth above are not intended to be an exhaustive list of all comparable cases. They are provided in support of Defendant Laureti's position that a sentence within the range of 72 months would comply with the mandate that "the court shall impose a sentence sufficient, **but not greater than necessary**, to comply with the purposes set forth in paragraph (2) of this subsection". 18 U.S.C. Section 3553(a)(1). The government has indicated that it will request the Court to order a guideline sentence of 262 months.  Such a sentence is unduly harsh and is not consistent with the sentences outlined above.

**(3) The Kinds of Sentences Available:**

In this particular case, it is clear that a sentence of a significant period of incarceration is the kind of sentence that is both available and appropriate. A sentence in the range of 72 months is unquestionably a significant sentence that would satisfy this element of Section 3553(a).  It should also be mentioned that the Bureau of Prisons, as a general rule, does not house inmates with sentences in excess of 10 years to Federal Prison Camps.  As a result, a defendant with a sentence longer than 10 years would likely serve a significant portion of his sentence in a facility with a higher security rating. These facilities place greater restrictions upon the inmates who are often, based upon their criminal history, a danger to the community or a substantial risk of flight. This is often referred to as "hard time". Mr. Laureti urges the Court to take this into consideration when fashioning his sentence.

**(4) The Sentencing Range Established by the Guidelines**.

    **(A) Presentence Investigation Report:**

The probation officer assigned to this case has prepared a comprehensive Presentence Investigation Report. However, the probation officer did not attend the actual trial and has written a report that essentially assumes that the jury accepted each and every allegation made by the government against Mr. Laureti.   As a result, the Presentence Investigation Report states, for the purposes of calculating the Federal Sentencing Guideline sentence, that the total adjusted offense level is 39 and the sentencing range is 262 months to 327 months. The total offense level of 39 reflected in the report was calculated by starting with a base offense level of 7 and adding an upward adjustment of 20 levels based upon a loss amount in excess of $9.5 million. The Presentence Investigation Report adds 2 levels, pursuant to Section 2B1.1(b)(10)(C) based upon the assumption that the false loan applications and early disbursement of cash to close constitutes sophisticated means. The Report also adds 4 more levels pursuant to Section 3B1.1 because Mr. Laureti was allegedly the organizer or leader of an organized criminal activity that involved 5 or more members. Two levels are added for alleged breach of a position of trust and two levels are added for obstructing justice by testifying at trial.  This brings the offense level to 39. The guideline range for level 39 is 262 to 327 months.

    **(B) Objections to 4 Level Upward Adjustment for Role in the Offense:**  Mr. Laureti has filed his objections to the Presentence Investigation Report. A copy of Mr.

Laureti's objections to the Presentence Investigation Report is attached hereto as Exhibit "C" and incorporated herein by reference.   In particular, Mr. Laureti objects to the assertion that he was the organizer or leader of an organized criminal scheme with 5 or more members.   The report states that the five members included Mostelac, Corzo, Cabrera, Ramirez, Melian, and Marco Laureti. However, even the government's witnesses refuted this position. Ramirez and Corzo never spoke to Mr. Laureti. Cabrera states that Mostelac directed her what to do with the cash to close. No one claimed that Mostelac followed the orders of Mr. Laureti.   The truth is that Mostelac was a con man and he recruited Corzo, Melian and Ramirez to be straw buyers. Mr. Laureti did not even know these people and did not direct them.   Cabrera was working with Mostelac before she ever met Mr. Laureti and she admitted that Mostelac directed her to disburse the funds to close for the Melian and Ramirez closings to the Laureti bank account.   This adjustment applies to Mr. Mostelac but not Mr. Laureti.

**D.  Upward Adjustment for Amount of Loss:**

The amount of loss arising from the 7 loans that Mr. Laureti was convicted of is approximately $7.5 million. Mr. Laureti requests that the Court find that the base offense is a level 7. The loss that he is responsible for is $7.5 million and the upward adjustment is 18 levels.   That no upward adjustment be given as to role. Mr. Laureti respectfully requests the Court to find that he did not hold a position of trust, he did not use sophisticated means and he did not obstruct justice by testifying and telling his side of the

story. Mr. Laureti respectfully requests the Court to find that the total offense level applicable to Mr. Laureti is 27 and the sentencing range is 70 - 87 months.

**Federal Sentencing Guidelines Sentence Range is not Presumed Reasonable:**

The Supreme Court has recently made clear that the district courts are not permitted to presume that within-guideline sentences are reasonable. *See Nelson v. United States, 129 S. Ct. 890, 892, 172 L. Ed. 2d 719 (2009).* In *Nelson*, the district court made the following statement during sentencing: "the Guidelines are considered presumptively reasonable," and so "unless there's a good reason in the [statutory sentencing] factors . . ., the Guideline sentence is the reasonable sentence." *Id. At 891.* In evaluating this statement, the Supreme Court emphasized that:

> Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable. In *Rita* we said as much, in fairly explicit terms: We repeat that the presumption before us is an appellate court presumption. . . . [T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply. *Id. at 892 (internal citations and quotation marks omitted).*

The Supreme Court found that even though the district court had viewed the Sentencing Guidelines as advisory, because the court presumed that a within-guideline sentence was reasonable, the resulting sentence was erroneous. *United States v. Alexander, 339 Fed. Appx. 941 (11ᵗʰ Cir 2009).   See also, United States v. Schmitt, 495 F.3d 860 (7ᵗʰ Cir. 2007);* wherein the court stated:

As we stated in *United States v. DeMaree, 459 F.3d 791, 794-95 (7th Cir. 2006)*: The judge is not required--or indeed permitted, *United States v. Brown, 450 F.3d 76, 81-82 (1st Cir. 2006)*--to "presume" that a sentence within the guidelines range is the correct sentence and if he wants to depart give a reason why it's not correct. All he has to do is consider the guidelines and make sure that the sentence he gives is within the statutory range and consistent with the sentencing factors listed in 18 U.S.C. § 3553(a).

The procedure demands that the court "sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." *United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007)*.

Mr. Laureti respectfully urges the Court to find based upon all of the 18 U.S.C. Section 3553(a) factors, including the Federal Sentencing Guidelines, that the appropriate sentence in this case is 72 months.

**(5) Any Pertinent Policy Statement:**

Counsel for Mr. Laureti has not identified any policy statement that is particularly pertinent to the facts presented in the instant case.

**(6) The Need to Avoid Sentence Disparities Amongst Defendants:**

In the instant case, there are several persons who were guilty of participating in the scheme:

a. **Hector Corzo**, a straw buyer, recruited by Yordanska Linares, Alain Sanz, and Felix Mostelac was **not charged**;

b. **Eneida Ramirez**, a straw buyer, recruited by her son Pedro Melian and Felix Mostelac was **not charged**;

c. **Galen Frizzie** who prepared false loan applications including, omitting hundreds of thousands of dollars in liabilities arising from loans he obtained for Eneida Ramiez, and Andrew Estopp, **was not charged**;

d. **Andrew Estopp**, a straw buyer, for Felix Mostelac was **not charged**;

e. **Pedro Melian** was **sentenced to probation** and ordered to pay $3,778,032 as restitution for violating 18 U.S.C. Section 1349 and 1343; and

f. **Michelle Cabrera**, a closing agent that had processed scores of fraudulent closings for numerous parties, was **sentenced to 25 months** incarceration and restitution of $10.5 million. This amount was the combined loss of all eight loans alleged in the superseding indictment but omitted all of her other relevant conduct.

Based upon the facts and circumstances of this case it would not be equitable for these persons to get no sentence or light sentences and Mr. Laureti get essentially a life sentence for a crime in which he did not intend to hurt anyone and resulted, in large part, due to a recession in the real estate sector not seen since the Great Depression. Mr. Laureti has provided, herein above, a list of cases in which defendants with similar records were found guilty of similar conduct and received sentences in the range of 36 to

120 months. The defendants that received more than 72 months had cases that involved a

loss substantially larger than the loss in this case.

**(7) The Need to Provide Restitution to Victims:**

Mr. Laureti recognizes that there is a need to provide restitution to the victim. Co-

defendant Pedro Melian was ordered to pay restitution in the amount of $1.99 million.

Michelle Cabrera was order to pay restitution in the amount of $10.5 million.  If the

Court determines that it is going to order restitution in Mr. Laureti's case, Mr. Laureti

respectfully requests that the amount be no greater than $7.5 million.

**Conclusion:**

There is a wide range of sentences that may be ordered by this Court.  The

question is what sentence is sufficient to be just punishment for the offense and will

promote respect for the law, but at the same time is no harsher than is necessary to

accomplish these goals and will be viewed as fair.  A life is a precious and valuable thing.

A sentence of 262 months would be essentially a life sentence for Mr. Laureti who is 46

years old. It would constitute a sentence significantly longer than the average sentence

rendered for murder in this jurisdiction. Mr. Laureti's conduct in this case does not

warrant such draconian punishment.  Mr. Laureti requests that the Court order a sentence

of 72 months. Only a person who is not going to serve such a sentence could suggest that

it is not a very long time to be detained.

Respectfully submitted,

DAVID M. GARVIN, P.A.
Attorney for Defendant, Marco Laureti
200 South Biscayne Boulevard,
Suite 3150
Miami, Florida 33131
Tel: (305) 371-8101
Fax: (305) 371-8848
Email: ontrial2@gmail.com

By: /s/ David M. Garvin
    DAVID M. GARVIN, ESQ.
    Florida Bar No. 347736

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 22, 2018 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.

/s/ David M. Garvin
DAVID M. GARVIN, ESQ.