## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 16-cr-60340-BLOOM

UNITED STATES OF AMERICA,

v.

MARCO LAURETI,

      Defendant.

_____/

### ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

**THIS CAUSE** is before the Court upon Defendant Marco Laureti's Motion for
Compassionate Release or Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No.
[307] ("Motion"). The Government filed a Response in Opposition, ECF No. [312], to which
Defendant filed a Reply, ECF No. [316].[1] The Court has carefully considered the Motion, the
supporting and opposing submissions, the record in this case, the applicable law, and is otherwise
fully advised. For the reasons that follow, Laureti's Motion is denied.

### I.    BACKGROUND

In December 2016, Defendant Marco Laureti was charged by Superseding Indictment for
his involvement in a sophisticated mortgage fraud scheme. ECF No. [5]. On November 6, 2017, a
jury convicted Laureti of seven counts of wire fraud affecting a financial institution, in violation
of 18 U.S.C. §§ 1343 and 2 (Counts 3, 4, 5, 6, 7, 8, 9), and one count of conspiracy to commit wire
fraud affecting a financial institution, in violation of 18 U.S.C. § 1349 (Count 1). ECF No. [88].
On January 31, 2018, the Court sentenced Laureti to a term of imprisonment of 180 months. ECF

_____

[1] Defendant originally filed his Reply on September 4, 2024, ECF No. [315]. Defendant then later filed an
Amended Reply on September 10, 2024.

No. [144].[2] Laureti is projected to be released from custody on August 16, 2029.

Laureti's instant *pro se* Motion seeks a reduced sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) based upon the absence of any available caregivers for his ex-wife and minor children. *See* ECF No. [307]. According to Laureti, since he is the only available caregiver, there are extraordinary and compelling circumstances warranting his immediate release. Laureti also claims he is entitled to compassionate release because he was a victim of abuse due to his exposure to mold and COVID-19 while incarcerated at FCI Coleman from 2018 to 2021. ECF No. [307] at 7.

The Government argues Laureti's Motion fails to provide an extraordinary or compelling reason justifying a reduced sentence, and neither the § 3553(a) factors nor the Sentencing Commission's applicable policy statement support this relief. *See* ECF No. [312]. The Government maintains that Laureti has failed to demonstrate he is the sole person capable of caring for his minor children, and since Laureti's ex-wife is neither his spouse nor his domestic partner, her illness may not serve as an independent basis to support compassionate release.

Furthermore, the Government contends Laureti has not satisfied the threshold requirements to prove he is a victim of abuse that resulted in serious bodily injury. Regarding the argument that Laureti's request for home confinement could support compassionate release, the Government maintains that the Bureau of Prisons has exclusive authority to determine where an inmate will carry out his or her sentence.

Laureti's Reply emphasizes the severity of his ex-wife's and mother-in-law's medical conditions to demonstrate the extraordinary and compelling justification for a reduced sentence.

---

[2] The Court also sentenced Laureti to five years of supervised release following the conclusion of his term of imprisonment. *See* ECF No. [144].

ECF No. [316] at 3-4. Laureti also highlights his minimal criminal record and the statistics suggesting that similarly situated defendants generally pose a limited risk and are unlikely to reoffend. *See id.* at 4-5.

## II.   LEGAL STANDARD

### A.  18 U.S.C. § 3582(c)(1)(A)

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'"

*United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

### 18 U.S.C. § 3582(c)(1)(A)

Laureti seeks compassionate release pursuant 18 U.S.C. § 3582(c)(1)(A). The relevant portion of the statute provides that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to

appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—

(i)     extraordinary and compelling reasons warrant such a reduction….

…

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i).

To grant a defendant's request for a reduced sentence under § 3582(c)(1)(A), the Court must: (1) find Defendant has exhausted his administrative remedies with the Bureau of Prisons ("BOP"); (2) conclude that extraordinary and compelling reasons warrant compassionate release in this case; (3) weigh the relevant § 3553(a) factors; and find that (4) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Eleventh Circuit has held any such reduction must be consistent with the applicable policy statement, U.S.S.G. § 1B1.13. *United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 583 ("In short, we hold that [§] 1B1.13 is an applicable policy statement that governs all motions under Section 3582(c)(1)(A). Accordingly, district courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with [§] 1B1.13."). Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

Section 1B1.13 of the Sentencing Guidelines lists the following extraordinary and compelling reasons: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while serving the term of imprisonment sought to be reduced; (5) other circumstances similar in gravity to those described in (1) through (4); and (6) an unusually long sentence. U.S.S.G. § 1B1.13(b). "Each of these circumstances is further defined in the Guidelines' policy statement. The policy statement definitions are binding on courts in this Circuit." *United States v. Harris*, Case No. 8:18-cr-483, 2024 WL 4932775, at *2 (M.D. Fla. Dec. 2, 2024) (citing *Bryant*, 996 F.3d at 1262).

## III.   DISCUSSION

### B.  Reduced Sentence under 18 U.S.C. § 3582(c)(1)(A)

Before a defendant may seek compassionate release, he or she must exhaust their administrative remedies. The Government concedes that Laureti has sufficiently exhausted his administrative remedies here. ECF No. [312] at 5.

#### i.      Defendant's Family Circumstances

Laureti's primary basis for compassionate release is the alleged incapacitation of his ex-wife Giovanna De La Cruz, the mother of his children, and his minor children's primary caregiver. De La Cruz currently has stage IV cancer which Laureti asserts "is an incapacitating illness" that has rendered her unable to continue serving as a caregiver to his minor children. ECF No. [307] at 6. Although he argues such a showing is not required, Laureti maintains that he is the only available caregiver for his two minor children. *See id.*

According to Laureti, the children's grandmother, Malva Machado, cannot take on the role of primary caregiver as she has severe depression and fibromyalgia that prevent her from providing adequate care to the children. *See id.* at 5. Laureti acknowledges that his oldest daughter is now 18, however, he insists that she cannot assume a full-time caregiver role or even assist with raising

the minor children as she is a full-time student at Florida State University in Tallahassee, Florida. *See id.* at 6. Laureti argues that his only other adult family member, his brother Federico Laureti, is also unable to assist in caring for the children due to his own family responsibilities. *Id.* Laureti, therefore, concludes he is the only available caregiver for his minor children and, as such, extraordinary and compelling circumstances exist warranting his release.

The Government argues that Laureti fails to establish that the alleged incapacitation of his children's caregiver warrants compassionate release. ECF No. [312] at 9. First, the Government contends that Laureti has not established that his ex-wife, the children's current caregiver, is incapacitated as she is not completely disabled. *See id.* Ms. De La Cruz continues to work and has maintained the role of primary caregiver to the children since 2019. *See id.* Similarly, although the minor children's grandmother has fibromyalgia and depression, those conditions do not render her unable to provide care. *See id.* at 10. The Government points out that the record reflects that the grandmother continues to provide care for the children. *Id.* The Government also contends that Laureti's adult daughter and his brother are capable of caring for his minor children as well. *See id.* at 11. Therefore, the Government acknowledges that, although it is no longer a threshold requirement that Laureti be the only available caregiver to the children, the availability of other caregivers is a weighty consideration that counsels against compassionate release. *See id.*

Section 1B1.13(3) provides the following family circumstances that permit a court to entertain a motion for compassionate release:

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. 1B1.13

To satisfy the requirements for any of these sections section out in §1B1.13(b)(3), the defendant must show his or her release is necessary in order for their minor child or incapacitated family member to receive adequate care. *See United States v. Gonzalez*, Case No. 11-CR-20474, 2024 WL 2882847, *3 (S.D. Fla. Feb. 28, 2024) (finding defendant did not satisfy the family circumstances prerequisites for compassionate releaser where there were family members besides the defendant who could provide care), *report and recommendation adopted*, No. 11-20474, 2024 WL 2716496, at *7 (S.D. Fla. May 28, 2024) ("§1B1.13(b)(3)(D) requires showing Defendant 'would be the only available caregiver for such family member or individual.") (emphasis in the original); *see also United States v. Laureti*, 859 F. App'x 490, 491 (11th Cir. 2021) (concluding this Court did not abuse its discretion in denying compassionate release for Laureti where there were alternative available caregivers). Laureti has failed to establish that his assistance is necessary to care for his minor children or ex-spouse. Indeed, with regard to the children, Laureti himself identifies at least three, possibly four, capable alternative caregivers; none of which are so incapacitated such that they are unable to render care.

Giovanna De La Cruz, Laureti's ex-wife and the mother of his children, is presently the minor children's primary caregiver. *See* ECF No. [307] (noting his ex-wife "was and has been the children['s] caregiver since her cancer went into remission to date."). Although De La Cruz has

stage IV cancer, the record does not clearly establish she is incapacitated. Not only does she continue to work and provide for her children, her and her children assert she remains their primary caregiver. *See* ECF No. [307] at 23-25. Although the letter from De La Cruz's oncologist states that she will require assistance from family as she proceeds through her cancer treatment, the letter does not establish that De La Cruz will be wholly unable to provide care to her children. With the assistance of her mother[3], her eldest daughter, and possibly even her brother-in-law, Laureti's ex-wife is arguably still capable of providing adequate care to her children.

Likewise, Laureti fails to show the children's grandmother, Malva Machado, is incapacitated. Laureti offers no evidence that Machado's age, fibromyalgia, or depression render her wholly disabled. *See United States v. Ortiz-Lopez*, Case No.: 8:11-cr-48, 2023 WL 3172560, *3 (M.D. Fla. May 1, 2023) (citing *United States of America v. Lawrence Rooks*, No. 21-CR-038, 2022 WL 267899, at *6 (E.D. Pa. Jan. 28, 2022) (noting that "a defendant typically must establish that all other potential caregivers for their minor child are incapacitated" and that "it is not enough to show a potential caregiver is merely 'inconvenienced' by the childcare or 'somewhat sick'" — the caregivers must be "completely disabled" to qualify as incapacitated (citations omitted)), *aff'd sub nom. United States v. Rooks*, No. 22-1332, 2022 WL 2964805 (3d Cir. July 27, 2022)). Laureti offers a letter from Machado's doctor acknowledging that she suffers from depression and fibromyalgia. While the letter indicates that she need assistance from her family, it does not establish she cannot serve as a caregiver or at the very least assist the children's mother with caregiving duties.

While the Court is certainly sympathetic to De La Cruz's and Machado's medical

---

[3] The Court notes that Machado's Doctor stated that she is currently assisting her daughter and providing care for her three grandchildren. *See* ECF No. [307] at 33.

conditions, "the Court is not at liberty to deviate from the text of the policy statement and rewrite the Application Note to accommodate Defendant." *United States v. Lemy*, CASE NO. 20-CR-80062, 2023 WL 246895, at * (S.D. Fla. Jan. 18, 2023).

Even assuming the children's mother and grandmother's health conditions prevented them from serving as caregivers in any capacity, Laureti identifies two additional alternative caretakers—his eldest daughter, Gianna Laureti, and his brother, Federico Laureti. While his eldest daughter no longer lives at home and is now attending Florida State University in Tallahassee, Florida, that does not render her unable to serve as a caregiver. She is physically able to provide for her siblings' needs. Although Gianna Laureti may need to move home, transfer schools, or even delay her schooling to serve as her siblings' caregiver, those are merely unfavorable choices, not bars to her ability to provide care. *See United States v. Gonzalez*, No. 17-CR-60223-Bloom, 2021 WL 4066897, at *5 (S.D. Fla. Sept. 7, 2021) ("[L]oved ones are often adversely impacted by a family member's incarceration and must make necessary and inconvenient life adjustments during that individual's incarceration. These often-unavoidable consequences, however, do not create extraordinary circumstances[.]"). As for Laureti's brother, although he may not be able to serve as the primary caregiver given the needs of his own immediate family, there is no evidence that he could not assist De La Cruz, Machado, and Giana in caring for Laureti's minor children. Laureti "may understandably prefer to care for [his] children [himself] but, unfortunately, it is not uncommon that a defendant's children or dependents must be placed in the care of other people as a consequence of the defendant's conviction." *United States v. Gonzalez*, No. 17-cr-60223, 2021 WL 40668977, at *5 (S.D. Fla. Sept. 7, 2021).

**ii.     The Incapacitation of Laureti's Ex-Wife**

Laureti also claims he meets the family circumstances as defined in § 1B1.13(b)(3)(B)

because he is the only caregiver for his ex-wife, De La Cruz, as her mother, Machado, is incapable of caring for her. ECF No. [307]. The Government points out that the family circumstances provision under § 1B1.13(b)(3)(B) only applies to spouses and registered partners. Since Laureti and De La Cruz have been divorced since March 2016, De La Cruz is no longer his spouse, nor are they registered partners, as their relationship is not the product of a "legally recognized civil union or registered domestic partnership." ECF No. [312] at 6 (quoting Bureau of Prisons Policy Statement § 5050.50 at 9 (2019)).

Furthermore, the Government reiterates that De La Cruz is not incapacitated. Although she has a serious illness, she is not "*completely disabled*, meaning that [she]…cannot carry on any self-care and is totally confined to a bed or chair." *Id.* (quoting Bureau of Prisons Policy Statement § 5050.50 at 10). Even if she is incapacitated, however, the Government contends that Laureti cannot use his ex-spouse's incapacitation as a basis for relief because there are other people capable of caring for her, such as her mother.

The Court agrees with the Government that Laureti's ex-spouse's alleged incapacitation does not serve as an independent basis warranting compassionate release. First, De La Cruz is not Laureti's spouse or registered partner. Although the Sentencing Commission adopted §1B1.13(b)(3)(D), broadening the understanding of what familial relationships could satisfy § 1B1.13(b)(3)(B), Laureti and De La Cruz's current relationship does not falls within § 1B1.13(b)(D)'s umbrella. Section 1B1.13(b)(3)(D) provides that family circumstances for compassionate release may be satisfied if the "[t]he defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such

family member or individual." The relationship between De La Cruz and Laureti is not similar to that of an immediate family member. By divorcing in 2016, they took affirmative steps to explicitly terminate their legal and familial relationship. As such, Laureti and his ex-wife's relationship is not what the Sentencing Commission intended to capture in their expansion of § 1B1.13(b)(3).

Moreover, as noted earlier, Laureti has failed to establish De La Cruz is incapacitated or that Laureti is the only person capable of providing her care. Therefore, even assuming Laureti and De La Cruz had a qualifying relationship, Laureti still has failed to demonstrate that his ex-wife's condition warrants his release.

### iii.    Abuse as a Result of Prior Prison Conditions

Laureti argues that while he was confined at FCI Coleman, he was a victim of abuse that resulted in serious bodily injury. According to Laureti, he was confined in "FCI Coleman Low's 'housing unit A-4'" for "approximately forty-eight (48) months." ECF No. [307] at 7. Laureti's imprisonment at FCI Coleman coincided with the peak of the COVID-19 Pandemic and "the physical layout [of the facility] made it impossible to social distance to prevent exposure…[and therefore] housing unit A-4 became a tinderbox for infectious disease." *Id.* Additionally, Laureti claims the housing units at FCI Coleman were "infested with black mold from years-long deferred maintenance." *Id.* at 8. As a result of his exposure to those unhealthy conditions, Laureti asserts that he now has diagnosed asthma and high blood pressure as well as undiagnosed "serious bodily injury to [his] organs, his lungs and heart." *Id.* at 9.

The Government responds that Laureti fails to satisfy the threshold requirements necessary to show he was a victim of physical abuse. Not only is there no evidence that Laureti's claim was proven in a legal or administrative proceeding, conditions at FCI Coleman are not the kind "contemplated by §1B1.13(b)(4) because 'the presence of harsh prison conditions—other than

physical or sexual abuse […] is not one of the specific extraordinary and compelling reasons' listed in the Policy Statement 1B1.13." ECF No. [312] at 12 (quoting *United States v. Feliz*, No. 16-CR-809-VM, 2023 WL 8275897, at *6 (S.D.N.Y. Nov. 2023)). Moreover, the Government points out that "Laureti is no longer incarcerated at Coleman; the risks of COVID-19 infection nationwide are now greatly reduced; and his current facility, USP McCreary, has no current open cases of COVID-19 infections." ECF No. [312] at 12. Additionally, Laureti offer no evidence of mold infestation other than subjective complaints from other inmates. *See id.*

Laureti's prior conditions of confinement may not serve as a basis for compassionate release as prison conditions are not one of the categories of extraordinary and compelling circumstances the Sentencing Commission has determined may support a reduced sentence. *See United States v. Magluta*, No. 21-13477, 2023 WL 4241281, at *4 (11th Cir. June 29, 2023) ("But as the district court correctly held, § 3582(c)(1)(A)(i) does not authorize an inmate's release based on the conditions of his confinement or the fact that those conditions are unfair."). Moreover, "courts have not recognized the conditions created by the Covid-19 pandemic as an extraordinary and compelling circumstance." *United States v. Gonzalez*, No. 11-CR-20474, 2024 WL 2716496, at *7 (S.D. Fla. May 28, 2024) (citing *United States v. Alvarez*, No. 14-cr-90110-BLOOM, 2022 WL 16856250, at *6 (S.D. Fla. Nov. 10, 2022) ("Defendant provides no authority, nor has the Court found any, to support relief [for harsh living conditions] pursuant to § 3582.")). Furthermore, Laureti is no longer confined at the complained-of facility and is now incarcerated at USP McCreary. Accordingly, any potential harm Laureti was suffering at FCI Coleman has since been eliminated by his transfer. Accordingly, the Court finds that Laureti's conditions of confinement at FCI Coleman fail to provide an extraordinary or compelling circumstance warranting release

from his current conditions.[4]

### iv.    Catchall Provision U.S.S.G. § 1B1.13(b)(5)

Laureti's final basis for compassionate release relies on § 1B1.13(b)(5), the so-called "catch-all" provision which provides that a defendant may establish extraordinary and compelling circumstances warranting relief if "the defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). Laureti argues that this provision entitles him to seek compassionate release because the Bureau of Prisons violated his Eighth and Fourteenth Amendment rights by not allowing him to carry out his sentence in home confinement.

The Government asserts that BOP's denial of Laureti's request for home confinement cannot serve as an "other reason" for compassionate release under § 1B1.13(b)(5) because "BOP has 'exclusive authority' to determine Laureti's place of confinement and this Court lacks the authority to order BOP to release him on home confinement." ECF No. [312] at 13 (citing *United States v. Ruiz*, No. 15-CR-60044-Bloom, 2022 WL 4271666, at *5 (S.D. Fla. Sept. 15, 2022) ("the Court does not have the authority to order [Defendant's] transfer to home confinement"). Consequently, Laureti's request is not cognizable under § 1B1.13(b)(5). *Id.*

---

[4] While Laureti does not explicitly argue that his medical conditions warrant compassionate release pursuant to § 1B1.13(b)(1), to the extent that he implicitly makes such an argument, this argument fails as well. The only diagnosed medical conditions Laureti presents to the Court are asthma and high blood pressure. Courts routinely reject these conditions as a basis for compassionate release. *See United States v. Giron*, 15 F. 4th 1343, 1346 (11th Cir. 2021) (affirming district court's denial of a motion for compassionate release based on the defendant's high blood pressure, notwithstanding the existence of the COVID-19 pandemic); *United States v. Peralta*, Case No. 16-cr-60341, 2021 WL 2400216, *5 (S.D. Fla. June 11, 2021) (denying motion for compassionate release based on defendant's asthma and obesity); *United States v. Merrill*, 847 F. App'x 675, 677 (11th Cir. 2021) (affirming that a bare assertion that defendant had asthma did not amount to extraordinary and compelling circumstances warranting compassionate release).

The Court agrees that Laureti has not established that extraordinary and compelling circumstances exist under § 1B1.13(b)(5). "[T]he authority to place a prisoner in home confinement rests solely with the BOP rather than judiciary." *United States v. Grover*, 844 F. App'x 185, 188, 189 (11th Cir. 2021) ("Neither § 3624(c)(2) nor the CARES Act, however, give the judiciary any authority to grant an inmate's request for home confinement."). Therefore, the Court cannot grant compassionate release simply because Laureti may qualify for home confinement under the governing statutes. *See United States v. Staltare*, Case No.: 8:14-cr-460, 2020 WL 2331256, at *1 (M.D. Fla. May 11, 2020) ("Once a court imposes a sentence, the BOP is solely responsible for determining an inmate's place of incarceration to serve that sentence.").

Moreover, Laureti's constitutional arguments lack merit. The BOP denial of Laureti's request for home confinement does not amount to an equal protection clause violation merely because other inmates who served less of their sentence were granted such a request. "To establish an equal protection violation a plaintiff must show []he was treated differently from similarly situated people outside h[is] protected class." *Holmes v. Federal Bureau of Prisons*, Case No. 7:20-cv-01717, 2021 WL 5071077, at *5 (N.D. Ala. Oct. 5, 2021) (citing *Wusiya v. City of Miami Beach*, 614 F. App'x 389, 393 (11th Cir. 2015)). Laureti does not argue that he was treated differently based on a protected characteristic, nor does he offer any evidence that the inmates who were permitted to serve their sentence on home confinement were similarly situated (i.e., committed crimes or were serving similar sentences to his). Therefore, Laureti fails to establish any basis for an equal protection claim.

Laureti's Eighth Amendment argument also fails. Not only is release from custody not an available remedy for such a violation, Laureti has not offered any objective evidence that prison officials "acted with deliberate indifference to [his] serious medical needs." *United States v.*

14

*Hundley*, 19-cr-20182-RAR, 2020 WL 6826362, at *2 (S.D. Fla. Nov. 20, 2020) (explaining that the Eighth Amendment prohibits deliberate indifference to serious medical needs and that release from custody is not an available remedy to an Eighth Amendment violation).

Therefore, even assuming Laureti's equal protection or cruel and unusual punishment theories could establish a basis for compassionate release, he has failed to show that any such violation has occurred.

## IV.   Conclusion

The Court concludes that Laureti has failed to meet the threshold requirements for entitlement to relief under § 3582(c)(1)(A) as he has not established extraordinary or compelling circumstances warranting relief. Consequently, the Court will not consider whether the § 3553(a) factors of the Sentencing Commission's applicable policy statement support compassionate release. *See United States v. Giron*, 15 F. 4th 1343, 1347 (11th Cir. 2021) ("[A] district court need not analyze the § 3553(a) factors if it finds either that no extraordinary and compelling reason exists or that the defendant is a danger to the public.").

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.   Defendant Marco Laureti's Motion for Compassionate Release Pursuant to 18 U.S.C.
     § 3582(c)(1)(A), **ECF No. [307]**, is **DENIED.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 15, 2024.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of record

Case No. 16-cr-60340-BLOOM

Marco Laureti
14482-104
McCreary-USP
United States Penitentiary
Inmate Mail/Parcels
Post Office Box 3000
Pine Knot, KY 42635
PRO SE